VANDALIA RAILROAD COMPANY ET AL. *v.* PUBLIC SERVICE COMMISSION.

[No. 22,553. Filed December 12, 1916.]

1. CARRIERS.—*Regulation of Rates.—Enforcement of Orders.— Questions Presented.*—Where a petition of a coal consumer seeks relief against alleged discrimination in charging it a higher rate for transporting coal than that theretofore fixed by the Railroad Commission for its competitors, but does not attack the validity of any established rate, the question of the power of the Railroad Commission to establish different freight rates on coal transported by the same carrier between the same points under like conditions is not presented for review. p. 655.

2. CARRIERS.—*Regulation of Rates.—Different Rates on Same Product.*—Where a lower rate was established by the Railroad Commission for transporting coal from the mines to manufacturers whose outbound products were shipped over the carrier's lines than that charged other manufacturers, a company operating an electric railway and generating electric current for lighting and power is entitled to the lower rate on that portion of its coal used in generating electric power furnished to its factory patrons shipping their products over the railroad. p. 656.

3. CARRIERS.—*Regulation of Rates.—Reasonableness of Order.*—An order granting two different freight rates to be charged for transporting coal to a company generating electric current for various

Vandalia R. Co. *v.* Public Service Commission—185 Ind. 652.

purposes, the lower rate to be charged for that portion of the coal, used in furnishing electric power to factory patrons shipping their outbound products over the carrier's lines, and requiring that electric meters, which the carrier had the right to inspect, be installed at such factories to measure the current consumed, is not unreasonable nor is the method of ascertaining the amount of coal consumed in manufacturing such current impracticable, where there is evidence that by the use of the meters it could be ascertained with accuracy what portion of the power company's coal was used in generating the power supplied to such factories, and, while the inspection of the meters imposes a new duty on the carrier, it is not so onerous as to warrant the setting aside of the order. p. 657.

4. CARRIERS.—*Regulation of Rates.*—*Discrimination.*—*Reasonableness of Rates.*—Under §5537 Burns 1914, Acts 1911 p. 460, empowering the railroad commission to investigate complaints of discrimination in railroad rates and make such new rates as are necessary to prevent injustice, where a coal consumer files a petition alleging unjust discrimination in charging it a higher rate of the established schedule for transporting coal than that charged to competing consumers, the commission can order a carrier to cease charging the petitioner the higher rate as being discriminatory without finding that the rate charged was unreasonable. p. 657.

From Marion Circuit Court (20,901); *Charles Remster*, Judge.

Action by the Vandalia Railroad Company and others against the Public Service Commission. From a judgment for defendants, the plaintiffs appeal. *Affirmed.*

*Frank L. Littleton, J. E. Kepperley, John B. Cockrum, Samuel O. Pickens* and *Owen Pickens*, for appellants.

*Milton Bell, L. J. Kirkpatrick, Warren R. Voorhis, John B. Elam, Harvey J. Elam* and *James W. Fesler*, for appellee.

MORRIS, J.—Action by Vandalia Railroad Company and four others to set aside an order of the Indiana Railroad Commission, predecessor of appellee Public Service Commission. §10052d Burns 1914, Acts 1913 p. 169. As shown by appellee's answer and by the evidence, appellants operate

railroads running between Kokomo and the coal fields of southwestern Indiana. In 1906, appellants, with the assent of the State Railroad Commission, fixed the following rates per ton for transporting coal from the mines to Kokomo: sixty-five cents for coal used by manufacturers furnishing products outbound over the railroads; seventy-five cents for that used for other steam purposes; and eighty-five cents for that used in domestic consumption. These rates are still in effect. Previous to 1911 the Kokomo, Marion and Western Traction Company, a corporation, was engaged in operating a street and interurban railway and an electric lighting plant in Kokomo, and was also engaged in furnishing to manufacturers electric current for power to operate their factories. It used about 30,000 tons of coal per annum which was shipped from said Indiana mines. About one-third of this amount was consumed in the manufacture of current for the factories which it supplied. These factories manufactured outbound products. The traction company was compelled by appellants to pay at the rate of seventy-five cents for all of its coal. Manufacturers of Kokomo, producing outbound wares, were charged sixty-five cents.

In June, 1911, the traction company filed a petition with the Railroad Commission against appellants, alleging discrimination and praying for an order authorizing its participation in the sixty-five-cent rate. A hearing resulted in an order providing that the traction company should be accorded the manufacturers' rate on that portion of coal which might be used by it in generating electric current furnished to its factory patrons making outbound products. The order provided a method of ascertaining the amount of coal used for such purposes by requiring the petitioner to install electric current

meters at the manufacturing plants, and subject to the carrier's inspection. It further required the petitioner to pay a seventy-five-cent rate on all coal received, when delivered, but further provided that at the end of each three-months period, after the ascertainment of the amount of coal consumed for manufacturing purposes, the carriers should refund to petitioner the sum of ten cents per ton for the coal consumed by it in generating current for its manufacturing patrons. To vacate that order this action was instituted.

The complaint assails the validity of the order for reasons hereinafter discussed. Appellee filed an answer to which appellants demurred. The demurrer was overruled. A trial resulted in a finding and judgment for appellee. Appellants rely on the alleged errors in the ruling on the demurrer and in overruling their motion for a new trial, which asserts that the court's finding is contrary to law. The evidence follows the allegations of the answer and the errors assigned are considered together.

Appellant first contends that the commission had no power to establish different rates on coal transported by the same carrier between the same

1.  points under substantially like conditions and circumstances. We are of the opinion that this record does not require a decision of such point. The complaint here did not attack the sixty-five-cent rate. The petition of the traction company was for relief against alleged unjust discrimination in charging it the seventy-five-cent rate while it accorded to its competitors the sixty-five-cent rate. The order of the commission, following a hearing on the petition, did not order or establish any new or different rate, but provided that the petitioner should be accorded the manufacturer's rate, long

before established by appellants with assent of the commission. However, a statute of this State expressly authorizes carriers, with the assent of the commission, to establish lower rates for coal used for manufacturing purposes than when used for domestic purposes. Acts 1907 p. 434, §5215 Burns 1914. On the subject of lower rates where "milling in transit arrangements" are involved, see 4 R. C. L. 596, §67, and authorities cited.

The next point urged by appellant is that the traction company was not, under the evidence, entitled to the manufacturers' rate. We are 2. of the opinion that appellants are in error. The evidence shows that Kokomo is a thriving manufacturing city, with scores of factories, many of them are operated by electric power from current generated on the premises by the use of coal shipped at the sixty-five-cent rate. The traction company supplies the current to fifty-six factories, for their operation in fabricating outbound wares. If these fifty-six factories should establish a central plant for generating current for all, it would be difficult to perceive why they should not be entitled to the same rate as that enjoyed by their competitors in generating power at their respective plants; and if so, why should not a third party, furnishing the same power to the fifty-six plants, be accorded the same rate? Possibly the central plant might not use quite as much coal in generating the current required, but whatever incidental loss the carrier might thereby sustain would probably be compensated by the economy in dealing with one rather than with numerous shippers. We are of the opinion that, while the traction company is not directly engaged in manufacturing outbound products, it should under the facts disclosed, be accorded

the manufacturers' rate, unless precluded by other matters hereafter noted.

It is next insisted that the order is unreasonable, and impracticable because there is no way for certain ascertainment of the coal consumed that

3. would be entitled to the manufacturers' rate.

This question is not without difficulty. The traction company uses its coal for generating electricity for the use of its traction lines, for lighting purposes, and for power furnished to the factories. There was evidence that by the use of electric meters (with the carriers accorded the right of inspection) it could be ascertained with accuracy the amount of coal consumed in manufacturing the current supplied to the factories for power purposes. In view of this evidence we do not feel warranted in setting aside the finding of the trial court, although the method of ascertaining the amount of coal consumed is a complex one, and might open an avenue to fraud on the carriers in the absence of careful inspection by them of the meters used. But it should not be forgotten that the ever-increasing complexities of modern life, whatever their cause, necessarily impose new duties on carriers as well as on those served by them. Inspection of electric meters, in connection with the charges of just rates for transportation, no doubt appears to the carrier as an unjust imposition of a new duty. Surely it is a new duty, but we do not feel inclined to consider it so onerous as to warrant the setting aside of the order.

It is finally urged that the commission did not find the seventy-five-cent rate charged the traction

4. company to be unreasonable. As before noted, the petition of the traction company was for relief for alleged unjust discrimination, and the order was made by the commission

on such theory, and pursuant to express statutory
authority. Acts 1911 p. 460, §5537 Burns 1914.
Judgment affirmed.

NOTE.—Reported in 114 N. E. 412. Matters to be considered on
issue of reasonableness of rates charged for carriage of goods, Ann.
Cas. 1916A 8.