OPINION OF THE COURT
Wachtler, J.
The question presented on this appeal is whether a tort committed against the mother of a child not yet conceived gives rise to a cause of action in favor of the child if that tort caused injury to the child during gestation. The Appellate Division determined that no cause of action for preconception tort is cognizable under the law of this State and we agree.
On December 27, 1971, Ruth Albala underwent an abortion at Bellevue Hospital during the course of which her uterus was perforated. In June of 1973 she commenced a malpractice action which was ultimately settled in June of 1979 for $175,000. Jeffrey Albala, the infant plaintiff in the case now before us, was conceived sometime in September of 1975, while his mother’s malpractice case was still pending. He Was born on June 3, 1976, four years after the alleged malpractice and three years before that lawsuit was settled.
This action was commenced on behalf of Jeffrey on September 26, 1978. It is contended that as a result of the alleged malpractice of defendants in negligently perforating Ruth’s uterus, seven years prior to this lawsuit, plaintiff was born with a damaged brain.
Special Term granted defendants’ motion for summary judgment and the. Appellate Division affirmed with one Justice dissenting. The simplicity with which the issue presented on this appeal may be stated: whether a cause of action lies in favor of a child for injuries suffered as a result of a preconception tort committed against the mother, belies both the delicate nature of the controversy and the analysis required to reach a just and proper resolution. We are of the opinion that the recognition of a cause of action under these circumstances would require the extension of *272 traditional tort concepts beyond manageable bounds and therefore agree with the Appellate Division that the complaint was properly dismissed,.
It is clear from a review of our prior decisions that we are presented with a question of first impression in this State. The instant case differs significantly from Woods v Lancet (303 NY 349) where we upheld a cause of action on behalf of a child for prenatal injuries incurred in útero as a result of a tort committed against the child’s mother during her pregnancy. In that case at the time the tort is committed there are two identifiable beings within the zone of danger each of whom is owed a duty independent of the other and each of whom may be directly injured.
Park v Chessin (46 NY2d 401), although instructive, is similarly distinguishable from the case at bar. There, Hetty Park gave birth to a child afflicted with polycystic kidney disease who died five hours after birth. The Parks then consulted with an obstetrician who had treated Mrs. Park during her first pregnancy to determine the likelihood of reoccurrence in a subsequent child. They were advised that the disease was not hereditary and that the probability of conceiving a second child afflicted with the disease was “practically nil”. Hetty Park subsequently gave birth to a second child afflicted with the disease who died within two and one-half years of birth.
In Park we refused to recognize a cause of action asserted on behalf of the second child on the basis of the allegations that had the negligence not occurred the afflicted child would never have been conceived, or if conceived the pregnancy terminated. We stated that a cause of action for “wrongful life demands a calculation of damages dependent upon a comparison between, the Hobson’s choice of life in an impaired state and nonexistence. This comparison the law is not equipped to make” (46 NY2d, at p 412 [citations omitted]).
Park is therefore distinguishable from the instant case for here, assuming the allegations in the complaint to be true, had the alleged negligence not occurred and Ruth Albala’s uterus not been perforated, plaintiff would have in all likelihood been born normal. Here, the defendants’ *273 alleged negligence made the difference between life in an impaired state and life in an unimpaired state, whereas in Park the alleged negligence made the difference between life in an impaired state and nonexistence.
Yet the teaching of Park is not altogether inapposite, for in that case we isolated the central concern which inevitably brings us to the difficult conclusion we reach today. We noted in that case that there is no predicate at common law or in our statutes for judicial recognition of the birth of a defective child as an injury to the child. We noted the staggering implications of any proposition which would honor claims assuming the breach of an identifiable duty for less than a perfect birth and by what standard and the difficulty in establishing a standard or definition of perfection (46 NY2d, at p 411). We recognized then, as we do now, that when faced with a novel cause of action sentiment should be put aside and the law must establish the rules ascribing liability in a manner which avoids the drawing of artificial and arbitrary boundaries (Howard v Lecher, 42 NY2d 109).
We are not unmindful of the point made by the dissent below and by plaintiff on this appeal that at the time Ruth Albala underwent an abortion in 1971 it was foreseeable that she would again conceive and that the health of children born thereafter could be adversely affected by damage to her uterus. We disagree, however, that this foreseeability alone established a duty to plaintiff on the part of defendants. We determined long ago in a case involving policy issues as sensitive as the ones at bar that foreseeability alone is not the hallmark of legal duty for if foreseeability were the sole test we could not logically confine the extension of liability (Tobin v Grossman, 24 NY2d 609, 615-616; see Pulka v Edelman, 40 NY2d 781, 785).
Thus, were we to establish liability in this case, could we logically preclude liability in a case where a negligent motorist collides with another vehicle containing a female passenger who sustains a punctured uterus as a result of the accident and subsequently gives birth to a deformed child? Unlimited hypotheses accompanied by staggering implications are manifest. The perimeters of liability al *274 though a proper legislative concern, in cases such as these, cannot by judicially established in a reasonable and practical manner.*
As a final consideration, it is worth noting that the recognition of a cause of action under the circumstances of this case would have the undesirable impact of encouraging the practice of “defensive medicine”. A physician faced with the alternative of saving a patient’s life by administering a treatment involving the possibility of adverse consequences to later conceived offspring of that patient would, if exposed to liability of the magnitude considered in this case, undoubtedly be inclined to advise against the treatment rather than risk the possibility of having to recompense a child born with a handicap. Accordingly, society as a whole would bear the cost of our placing physicians in a direct conflict between their moral duty to patients and the proposed legal duty to those hypothetical future generations outside the immediate zone of danger.
While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred (Howard v Lecher, 42 NY2d 109, supra). In defining the common law, it is this court’s duty to consider the conse *275 quences of recognizing a novel cause of action and to strike the delicate balance between the competing policy considerations which arise whenever tort liability is sought to be extended beyond traditional bounds.
Accordingly, the order of the Appellate Division should be affirmed, with costs.

 Although three cases in other jurisdictions have recognized the validity of a cause of action for preconception tort, we find these eases unpersuasive. Two of these cases, Bergstreser v Mitchell (577 F2d 22) and Renslow v Mennonite Hosp. (67 111 2d 348) were decided on policy grounds based largely on a misplaced reliance upon precedent in prenatal injury cases which, as we noted above, are inapposite. Moreover, both the Bergstreser and Renslow courts relied in part on the Special Term holding in Park v Chessin (88 Mise 2d 222) which was expressly overruled by this court.
The third preconception tort case relied on by plaintiff and the dissent below, Jorgensen v Meade Johnson Labs. (483 F2d 237), was decided on a products liability theory for which there is strict liability without fault. Under a products liability theory, once a defect in manufacture or design is established or there has been a failure to give adequate notice of foreseeable potential hazards, the liability of the manufacturer is extended to the entire class of persons thereby affected regardless of privity, foreseeability or due care (Codling v Paglia, 32 NY2d 330). Accordingly, the necessity of establishing manageable bounds for liability is conspicuously absent. Since Jorgensen was not therefore concerned with the policy issues presented in the instant appeal, any reliance thereon is misplaced (see, also, Robertson, Toward Rational Boundaries of Tort Liability for Injury to the Unborn: Prenatal Injuries, Preconception Injuries and Wrongful Life, 1978 Duke LJ 1401, 1436, 1438).