OPINION OF THE COURT
Joseph D. Mintz, J.
In response to plaintiffs’ motion to add Donna Patterson as *873 a party plaintiff on behalf of the estate of Rebecca Lee Patterson, defendants cross-move for dismissal of any cause of action on behalf of Rebecca Lee Patterson under CPLR 3211, for failure to state a cause of action. Briefly, the facts as alleged are as follows: Donna Patterson, while an employee of defendants Harmac Industries and Extracorporeal Medical Specialties, claims to have been exposed to ethylene oxide (hereinafter called EtO). Rebecca Lee Patterson was conceived subsequent to Donna Patterson’s last date of exposure and was born with chromosomal damage which plaintiff Donna Patterson alleges was attributable to her exposure to EtO. Causes of action on behalf of Rebecca Lee Patterson are based in negligence, strict products liability, breach of warranty and fraud. The questions presented herein are whether a cause of action exists under any of these theories for injuries alleged to have occurred to a child prior to the child’s conception, and, if so, how the Statute of Limitations is measured on any of the causes of action.
The parties agree that the issue presented herein, i.e., the existence of a cause of action for preconception tort* has been addressed only once in the New York courts. In Albala v City of New York (54 NY2d 269 [1981]) the Court of Appeals refused to allow a cause of action for preconception tort in a case based in negligence and medical malpractice. There is no question that under the Albala decision, the causes of action in negligence are impermissible, and accordingly, those causes of action are hereby dismissed. Plaintiff argues, however, that the decision in Albala is not controlling as to the other causes of action in that (1) Albala concerned a negligence action and policy determinations relevant only to negligence; and (2) in Albala (supra, at p 274, n) the court indicated that it was not persuaded by Jorgensen v Meade Johnson Labs. (483 F2d 237 [10th Cir 1973]) in that Jorgensen "was decided on a products liability theory for which there is strict liability without fault”; and "the necessity of establishing manageable bounds for [strict] liability is conspicuously absent.” If plaintiff is correct that Albala is not dispositive, a ruling on this issue in her favor would still entail a determination by this court to recognize a cause of action which, although perhaps not *874 expressly disallowed, has not heretofore been recognized. While this court is in agreement that Albala does not expressly disallow a cause of action accrued prior to a claimant’s conception based on a theory other than negligence, a recognition of a cause of action based in strict liability (or other nonnegligence theory) cannot be assumed by the footnote cited nor any other part of the decision in Albala. It is this court’s reading of the footnote that the Court of Appeals only intended to preserve the issue for future decision with respect to strict products liability cases, and the footnote cannot be taken as an implication that the court would or would not extend Albala to a strict products liability case. Thus, this court is neither controlled by Albala nor is it foreclosed from extending Albala herein simply on the basis of the footnote. It is this court’s determination that the issue presented herein is of first impression.
The determination in Albala (supra) was purely one of policy. As the majority as well as dissent notes, the alleged injuries to the plaintiff therein were foreseeable, causally related and resulted in ascertainable damages. (Cf. Becker v Schwartz, 46 NY2d 401 [1978].) The decision was the exercise of the court’s duty to limit liability where policy so demanded. (Tobin v Grossman, 24 NY2d 609 [1969].) Thus, determination of the issue presented herein entails a determination of whether policy considerations mandate limitation of liability.
The footnote indicates that there may not be policy reasons to limit liability in cases like Jorgensen (supra) involving "strict liability without fault” (Albala v City of New York, supra, p 274, n). Defendants urge that New York’s version of strict products liability is not strict liability without fault as contrasted with Oklahoma’s law under which Jorgensen was decided. This court is unpersuaded by such a distinction. It seems clear that in citing Codling v Paglia (32 NY2d 330) in that portion of the footnote in which the court distinguished policy in negligence cases from policy in cases involving "strict liability without fault”, the court gave a clear indication that what was meant by "strict liability without fault” in that context was the species of strict liability established in Codling v Paglia (supra). (Cf. Rosado v Proctor & Schwartz, 66 NY2d 21.)
The lack of need for limitation on liability in most strict products liability cases may be inferred from not only the court’s footnote in Albala but from other policy discussions in decisions of the court with respect to the extension of that *875 theory of recovery. (Codling v Paglia, supra, at pp 339-341; Victorson v Bock Laundry Mach. Co., 37 NY2d 395, 401-404 [1975]; Martin v Edwards Labs., 60 NY2d 417, 427 [1983].) However, equally forceful is the indication of policy need for limitation of liability in exposure and ingestion cases. (See, Thornton v Roosevelt Hosp., 47 NY2d 780 [1979], which was pleaded as a strict products liability case, and Martin v Edwards Labs., supra, at p 427, which reaffirmed the Thornton rule and reiterated its policy reasons while distinguishing exposure and ingestion cases.) While these cases involve questions of accrual for Statute of Limitations purposes, the policy considerations are equally applicable herein. The court is clearly concerned with the proliferation of frivolous claims and claims where proof presents a hardship to defendants.
Furthermore, it seems incongruous to allow an action for preconception tort in an exposure case while applying a Statute of Limitations which accrues on date of last exposure. If the cause of action accrues long before conception, how can a plaintiff not in being at date of accrual have a cause of action? This is the result urged by plaintiff. It is untenable.
Finally, the court has carefully avoided opening the doors to litigation by plaintiffs claiming injury due to acts of defendants before their birth. Since Woods v Lancet (303 NY 349 [1951]) first allowed recovery due to postconception prenatal injury, extension of such rights of recovery has been limited. (See, Tebbutt v Virostek, 65 NY2d 931; Vaccaro v Squibb Corp., 52 NY2d 809 [1980]; Albala v City of New York, 54 NY2d 269, supra; Becker v Schwartz, 46 NY2d 401, supra [1978].) Extension of Woods to allow actions for preconception torts would not be consistent with the policy evidenced by the Court of Appeals decision therein. In order to allow a cause of action for preconception tort there requires the finding of a duty to the unconceived. Such a duty can only be couched in terms of a duty to protect the potentiality of life. (Robertson, Toward Rational Boundaries of Tort Liability For Injury To The Unborn: Prenatal Injuries, Preconception Injuries And Wrongful Life, 1978 Duke LJ 1401.) New York has not recognized any such duty. (See, Endresz v Friedberg, 24 NY2d 478 [1969]; see also, Hahn v Taefi, 115 AD2d 946, wherein the court refused to recognize any right to recovery for the plaintiffs sterility.)
On the basis of the foregoing, the proposed plaintiff fails to state a cause of action and amendment so as to add this party as a plaintiff is denied. Defendants’ motion to dismiss is *876 granted on the grounds of failure to state a cause of action; the court need not address the issue of Statute of Limitations and application of the relation back theory in amended pleadings.

 The term "preconception tort” is used herein as a generic term for the proposed causes of action regardless of whether the underlying theory is one of tort or contract.