OPINION OF THE COURT
Irad S. Ingraham, J.
Plaintiffs bring suit to recover damages for personal injuries and related claims allegedly sustained as a consequence of ingestion of the drug diethylstilbestrol by Rosemary Whitmore Hickson, the mother of plaintiff Patricia Enright and the grandmother of plaintiff Karen Enright.
Defendants move for summary judgment dismissing the complaint for failure to state a cause of action and on the ground the claims are time barred together with various other grounds.
factual background
The drug diethylstilbestrol (DES) was invented more than 50 years ago and had been dispensed to women in the United States from 1941 to 1971. In 1947 the Federal Drug Administration approved the drug for treatment of complications relating to pregnancy. In 1971 its use was banned due to the link between its use and the later development of cancer in female offspring. Further history of the drug is unnecessary here as it has been cogently detailed in prior litigation. (See, Bichler v Lilly & Co., 55 NY2d 571.)
In the instant case it is alleged that Rosemary Whitmore Hickson ingested DES "within the years 1959 and I960”. She gave birth to plaintiff Patricia Enright on January 29, 1960. Patricia Enright gave birth to plaintiff Karen Enright on August 9, 1981. It is alleged that Patricia Enright sustained a malformed uterus, cervical and uterine dysfunction and squamous metaplasia as a consequence of her mother’s ingestion of DES. As a result of those injuries, it is alleged that Karen Enright was born prematurely and suffered cerebral palsy, grand mal seizures and various related congenital defects. In addition it is alleged that Patricia Enright suffered four spontaneous abortions before and after the birth of Karen Enright.
The exact dates of ingestion of DES by Rosemary Hickson, the names of the dispensing pharmacy and pharmacist, the prescription, the instructions for ingestion and the manufac *196 turer of the drug ingested are all "unknown” to plaintiffs. Plaintiffs’ theory of liability as set forth in their complaint is:
"If Plaintiffs are unable to identify the specific manufacturer and/or manufacturers of the specific DES ingested by Rosemary Whitmore Hickson same causing injuries as aforesaid to Plaintiffs herein, then Plaintiffs will rely on the theory of concerted action in that the Defendants, their agents, servants and/or employees, in pursuance of a common plan or design committed tortious acts as aforesaid in consciously paralleling each other, in failing to test and/or warn due to some implied understanding or defendants, their agents, servants, and/or employees, acting independently of each other, failed to properly test said DES, having the effect of substantially aiding or encouraging the failure to adequately test and warn by the others.
"Alternatively, Plaintiffs will rely on the theories of alternative liability, and/or enterprise liability, and/or market share liability.”
Defendants, in moving to dismiss, emphasize that plaintiff Karen Enright, conceived some 21 years after her grandmother’s exposure to DES, has no cause of action under New York law. They further contend that without identification of the manufacturer of the drug ingested no liability can be posited. It is uncontroverted that DES was manufactured often generically by dozens of drug manufacturers. Defendants also claim the unconstitutionality of the revival statute under which plaintiffs are permitted a late filing of their claims.
CONCLUSIONS OF LAW
From the voluminous documents filed and the myriad of issues therein raised, the following primary issues are distilled:
1. Does a granddaughter, born more than 20 years after the ingestion of drugs by her grandmother, have a cause of action against the drug manufacturer for birth defects claimed to have resulted from her mother’s injuries which are linked to the drug ingestion?
2. Does New York recognize a joint theory of liability whereby all or any drug manufacturers of a harmful drug may be held responsible for injuries sustained from the drug regardless of whether they are identified as the manufacturer of the drug in the individual case?
*197 3. Is the revival statute which permits the late filing of the instant lawsuit unconstitutional?
4. Does such revival statute permit a derivative claim for loss of consortium?
5. Are emotional claims resulting from the birth of a handicapped child cognizable in New York?
1. THE THIRD GENERATION CLAIM
Unquestionably a cause of action exists for a child whose injuries occurred in útero. (Woods v Lancet, 303 NY 349.) A cause of action does not exist for a child conceived after tort injury to the parent. (Albala v City of New York, 54 NY2d 269.) Neither case considers the posture of plaintiff Karen Enright. Patricia Enright’s claim is for injuries occurring in útero. Karen Enright’s cause of action is the claim of a child not in existence for injuries which resulted from injuries to a mother in útero, where the conduct complained of was directed to the grandmother. Clearly no parallel authority has been cited. To the extent, however, that Albala and Cather-wood discuss "preconception tort in an exposure case”, they are useful in furnishing instruction on policy considerations as well as the differentiation between tort liability and strict products liability cases. (Albala v City of New York, supra; Catherwood v American Sterilizer Co., 130 Misc 2d 872, affd 126 AD2d 980.)
Judge Wachtler, in the Albala case (supra), outlined the policy considerations militating against the expansion of liability to preconception tort:
"We are of the opinion that the recognition of a cause of action under these circumstances would require the extension of traditional tort concepts beyond manageable bounds * * *.
"[T]here is no predicate at common law or in our statutes for judicial recognition of the birth of a defective child as an injury to the child. * * *
"We determined long ago in a case involving policy issues as sensitive as the ones at bar that foreseeability alone is not the hallmark of legal duty for if foreseeability were the sole test we could not logically confine the extension of liability * * *.
"Unlimited hypotheses accompanied by staggering implications are manifest. The perimeters of liability although a proper legislative concern, in cases such as these, cannot be judicially established in a reasonable and practical manner. * * *
*198 "While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred”. (Albala v City of New York, supra, at 271-274.)
Judge Wachtler in a footnote distinguishes between tort liability and products liability. That distinction, although relied upon by plaintiff here, was held to be inapplicable to this type of case by the Appellate Division, Fourth Department, in the Catherwood case cited supra. Indeed, the theory of liability in this case becomes blurred of necessity when plaintiff cannot identify the responsible drug manufacturer. The cause of action reverts to a tort claim when coupling all defendants in a common plan to commit a tortious act, rather than relying upon a strict products liability cause of action.
Regardless of the label given to the cause of action, it would appear that the above policy considerations do apply. The Jorgensen and Codling cases referred to by Judge Wachtler are clearly distinguishable here. (Jorgensen v Meade Johnson Labs., 483 F2d 237; Codling v Paglia, 32 NY2d 330.) Certainly policy considerations which apply to second generation unconceived plaintiffs should be doubly applicable to third generation unconceived plaintiffs. Indeed it is doubtful that the Legislature considered such an eventuality in opening the "window” (revival statute) for the late filing of DES claims.
The Assembly sponsor stated, "We picked the substances in this bill where we have an identifiable group of victims * * *. The Senate limited it to the five substances because they believe there was a parameter of victims, so there would be some insurance predictability.” (Miller,, June 24, 1986; emphasis added.) Certainly in approving the measure, the Governor held a limited view of those entitled to sue.
"Most importantly, this measure remedies the injustices suffered by all of the currently known categories of victims of exposure to toxic or harmful substances. These include persons who have suffered serious injuries as a result of exposure to diethylstilbestrol * * * and have been deprived of access to the courts because their claims were time barred.” (Governor’s mem of approval, 1986 McKinney’s Session Laws of NY, at 3183; emphasis added.) The law itself, while not a model of clarity, appears to be limiting: "every action for personal injury * * * caused by the latent effects of exposure to diethylstilbestrol * * * upon or within the body * * * which is barred as of the effective date of this act solely because the *199 applicable period of limitations has * * * expired is hereby revived”. (L 1986, ch 682, § 4; emphasis added.)
Necessarily it is not for this court to determine the likelihood of plaintiff’s success should this action proceed. Rather, under a summary judgment review, it will be presumed that the facts set forth in the complaint are true. Karen Enright was born with severe congenital defects resulting from a premature birth. Her right to bring suit must now be determined by this court as a matter of law. Her attorney asks this court to cast liability backward two generations to a drug manufacturer. Sympathies lie with the infant plaintiff. Sympathies however cannot form the legal foundation for the pioneering decision sought by plaintiffs. The practical considerations articulated by Judge Wachtler are perhaps nowhere so graphically illustrated as in this case. The plaintiff’s bill of particulars furnishes this insight. The plaintiffs cannot provide the name of the pharmacy, the prescription, a physical description of the drug ingested by the grandmother, the name of the pharmacist, or the instructions for ingestion. Proceeding from such background, it must be assumed that defendants will be equally unable to produce any definitive information for trial review. The passage of time and generations obscure such evidence to the extent that a third generation lawsuit must necessarily be posited solely upon sympathy and conjecture. Once all legal requirements of proof and rational limitations on the area of actionable causation are removed, the fact finding of the trial court will be severely impaired. There is no legal precedent for such liability. The precedent is to the contrary. That precedent is founded upon well-reasoned considerations to which this court subscribes.
The claims of the plaintiff Karen Enright are dismissed as well as those claims of Patricia Enright and Earl Enright which are posited upon her claims. Specifically causes of actions Nos. 1, 2, 3 and 4 are dismissed.
2. LIABILITY OF UNIDENTIFIED MANUFACTURER
The general rule casts the burden of proof upon the plaintiff to identify both the specific substance and the manufacturer thereof in order to state a cause of action. (Morrissey v Conservative Gas Corp., 285 App Div 825, affd 1 NY2d 741.) The policy considerations for such rule have already been reviewed. Where a cause of action does exist, however, and the injury goes undetected, documented identification is impossi *200 ble and where it is clear that the harmful product is manufactured in substantially the same form by a number of manufacturers, several jurisdictions have adopted theories to relieve the plaintiff of its burden, and shift the identification problems to the manufacturers.
The Court of Appeals makes clear that none of the theories has received its imprimatur, although it affirmed a First Department ruling which applied the "concerted action” theory. (Kaufman v Lilly & Co., 65 NY2d 449; Bichler v Lilly & Co., 79 AD2d 317.)
Plaintiffs here tender a "shotgun” offense, relying in the alternative upon four different theories of unidentified manufacturer liability:
1) Concerted action
2) Alternative liability
3) Enterprise liability
4) Market share liability.
Several of these theories may be rejected outright. Plaintiffs have targeted six of the major drug companies, while it is conceded that upwards of 100 manufactured DES and 12 were involved in a select committee to make recommendations to the Federal Drug Administration. Both the alternative liability and the market share liability theories are unavailable where plaintiff elects to join only a limited number of the potentially liable defendants. (Sindell v Abbott, 26 Cal 3d 588, 163 Cal Rptr 132.) The enterprise liability concept is described as a "hybrid, derived from concepts of álternative and concurrent liability and the law of products liability to form a type of absolute liability.” (Annotation, Defective Product — Enterprise Liability, 22 ALR4th 182, 185.) It has been applied to DES cases, but not in New York.
The concerted action theory has been relied upon in cases tried in New York in the First and Second Departments. (Bichler v Lilly & Co., 79 AD2d 317, supra; Konopka v Lilly & Co., Nov. 19, 1987, Nastasi, J.)
The concerted action theory may be available to a plaintiff in spite of its targeting only a limited number of manufacturers as defendants. (Graphic Arts Mut. Ins. Co. v Bakers Mut. Ins. Co., 45 NY2d 551.)
Where it can be established that defendants acting jointly adopt a common plan or design to commit a tortious act or ratify such a common plan, those injured thereby may hold *201 any one of the defendants liable. (Bichler v Lilly & Co., supra.) Consequently it is the joint tortious activity of the manufacturers which gives rise to the cause of action.
"It does not strain one’s sense of fairness to allow a limited expansion of the doctrine of concerted action to cover the type of circumstances faced in a DES case where the traditional evidentiary requirements of tort law may be insurmountable.” (Bichler v Lilly & Co., supra, at 329.)
Inexplicably the defendants did not actually contest the plaintiffs concerted liability theory in Bichler (supra) by motion or exception to charge, resulting in a failure to preserve the issue for the Court of Appeals. Consequently the affirmance coupled with a later DES case formulated the ruling (or nonruling) that: "[W]e expressed no view in Bichler and, express none now, on which of the proposed theories — concerted action, alternative liability, enterprise liability or market share liability — if any, should be adopted in this or similar DES cases (see, Bichler v Eli Lilly & Co., supra, at p 580, n 5). The question is still an open one in New York.” (Kaufman v Lilly & Co., 65 NY2d 449, 456, supra.)
The compliance by the defendants here with the original Federal Drug Administration directive that they pool their information in 1941 unfortunately now forms the basis for the Bichler conclusion that the defendants acted jointly to commit a tort. The model then adopted set the pattern for later manufacturers. But factual matters do not come into play on this a motion for summary judgment. It is a legal issue which apparently has been ruled upon by the First Department. This court feels that the same practical considerations which militate against extension of tort liability to third generation claims also militates against the concerted action theory of liability which in effect sanctions a lack of proof on plaintiffs part and shifts the burden of proof to defendants. The legal foundation for such a theory is lacking and the proponents are reduced to a Robin Hood logic of targeting the most prominent drug manufacturers to give to the unfortunate. However, the Bichler case (supra) at least at the Appellate Division level has spoken. It is incumbent upon this court to follow such precedent, and accordingly the summary judgment motion on this basis must fail. (Mountain View Coach Lines v Storms, 102 AD2d 663.)
Defendant RXDC asserts as a further defense to the concerted action theory that it can establish exculpation. Clearly, *202 where concerted action is an available remedy, a defendant who can establish that he was not the purveyor of the drug to a particular plaintiff and did not act tortiously in concert with those which did, stands on different footing from his codefendants. Exculpation, however, necessarily must rest upon proof of factual allegations. (Tique v Squibb & Sons, 139 AD2d 431.)
This court concludes that evidence may be adduced by defendants as to exculpation in defense of the concerted action theory, but a summary judgment does not lie in their favor prior to trial.
3. THE CONSTITUTIONALITY OF THE REVIVAL STATUTES
This issue has in general been dealt with by the courts. (See, In re "Agent Orange” Prod. Liab. Litig., 597 F Supp 740; Gallewski v Hentz & Co., 301 NY 164; Matter of McCann v Walsh Constr. Co., 282 App Div 444.)
Exceptional circumstances must be demonstrated to warrant legislative intervention in reviving a cause of action which is time barred. Such circumstances have been documented in the legislative history of this enactment. It is obvious that the DES injuries are undetectable until the second generation and an exposure statute affords no remedy for the injuries sustained. Exceptional circumstances have been demonstrated and any claims based upon the unconstitutionality of the revival statute are denied.
4. REVIVAL OF DERIVATIVE CLAIMS
The statute herein revives "every action for personal injury, injury to property * * * caused by the latent effects of exposure to diethylstilbestrol * * * upon or within the body”. (L 1986, ch 682, § 4.) Where the personal injury action is revived, the derivative loss of consortium claim is also revived. (Piccirelli v Johns-Manville Sales Corp., 128 AD2d 762.)
While it is true that Patricia Enright brought her injuries to the marriage relationship, they were undiscoverable until child bearing. Accordingly the general tort rule is inapplicable, for the very purpose of the revival statute is to permit this type of litigation for an undiscoverable tort.
The complaint claims damages for plaintiff Earl Enright alleging "that he will never have a healthy child.”
The complaint claims damages for plaintiff Patricia Enright alleging she "suffered emotional injury and distress due to her *203 physical and emotional injuries as well as the physical and emotional injuries sustained by her daughter the infant Plaintiff Karen Enright.”
The claims of the parents insofar as they claim damages for emotional injuries resulting from the birth of their child are not cognizable under the laws of New York. (Howard v Lecher, 42 NY2d 109, 113; Becker v Schwartz, 46 NY2d 401, 413; Tobin v Grossman, 24 NY2d 609.)
Accordingly cause of action No. 7, insofar as it claims emotional injury as a result of the handicapped condition of Karen Enright, is dismissed, and cause of action No. 9 is dismissed.