KAREN ENRIGHT, an Infant, by PATRICIA ENRIGHT, Her Parent and Natural Guardian, et al., Appellants-Respondents, v ELI LILLY & COMPANY et al., Respondents-Appellants, and ABBOTT LABORATORIES et al., Respondents.

Third Department, March 22, 1990

APPEARANCES OF COUNSEL

*Leonard L. Finz, P. C.,* and *DiJoseph & Gluck (Steven DiJoseph* of counsel), for appellants-respondents.

*Brown & Wood (Russel H. Beatie, Jr., Kenneth J. King* and *Charna L. Gerstenhaber* of counsel), for Eli Lilly & Company, respondent-appellant.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Alexander C. Cordes* of counsel), for E.R. Squibb & Sons, Inc. and others, respondents-appellants.

## OPINION OF THE COURT

CASEY, J. P.

At issue on this appeal is whether the infant plaintiff, Karen Enright (hereinafter plaintiff), who was born with various physical disabilities, has a cause of action against the manufacturers of the drug diethylstilbestrol (hereinafter DES), which was allegedly ingested by plaintiff's grandmother while pregnant with plaintiff's mother and allegedly caused certain physical abnormalities in the mother which, in turn, caused the physical disabilities with which plaintiff was subsequently born. Supreme Court answered this question in the negative and dismissed all causes of action seeking to recover damages

for plaintiff's injuries (141 Misc 2d 194). We reach a contrary conclusion as to plaintiff's strict products liability cause of action.

The complaint alleges that plaintiff Patricia Enright (hereinafter Enright), who was born in 1960, was exposed to DES *in utero* as a fetus due to her mother's ingestion of DES during pregnancy at the direction of a physician. It is further alleged that due to this exposure Enright developed certain anatomical abnormalities and deformities in her reproductive system which subsequently prevented her from carrying a baby to full term. Enright gave birth to plaintiff in August 1981. It is alleged that plaintiff was born prematurely due to Enright's abnormalities developed as a result of exposure to DES and that plaintiff's premature birth caused plaintiff to develop severe disabilities which will affect her for her entire life.

Enright and her husband commenced this action individually and on behalf of plaintiff against various manufacturers of DES, alleging causes of action sounding in negligence, strict products liability, breach of warranty and fraud. Damages are sought for physical and emotional injuries sustained by Enright, and physical injuries, pain and suffering sustained by plaintiff. Enright's husband asserts a derivative cause of action and a cause of action based upon the inability to have a healthy natural child of the marriage. The complaint also alleges that if it cannot be proven which of defendants manufactured the DES ingested by plaintiff's grandmother, recovery would be sought on the basis of alternative liability and/or enterprise liability and/or market share liability. After issue was joined, defendants moved for summary judgment, claiming, *inter alia,* that since New York does not recognize preconception tort liability, all claims based upon plaintiff's injuries must be dismissed; that no recovery could be had by parents for damages based upon emotional distress resulting from the birth of an impaired child; that the failure to identify the manufacturer of the DES ingested by plaintiff's grandmother required dismissal of all claims; and that Enright's claims were time barred since the revival statute under which they were brought (L 1986, ch 682, § 4) is unconstitutional. Supreme Court held that New York does not recognize preconception tort liability; that New York does not permit parents to recover for emotional distress resulting from the birth of an impaired child; that Enright and her husband could proceed on a concerted action theory of liability; and that the revival

statute is constitutional. The resulting order generated the parties' cross appeals.

■■ In the Court of Appeals recent decision in *Hymowitz v Lilly & Co.* (73 NY2d 487, *cert denied* — US —, 110 S Ct 350), which will govern the future course of this action, the court approved the use of a market share theory of liability in DES cases and upheld the constitutionality of the toxic tort revival provision. Thus, the only disputed issue to be resolved on this appeal concerns preconception tort liability.[1] Any analysis of this issue must begin with *Albala v City of New York* (54 NY2d 269), where the Court of Appeals held that a child does not have a cause of action against the doctors who negligently perforated the mother's uterus some four years prior to conception, resulting in brain damage to the child during gestation.

The holding in *Albala* is based upon policy considerations, with the court expressing its "opinion that the recognition of a cause of action under these circumstances would require the extension of traditional tort concepts beyond manageable bounds" *(supra,* at 271-272). Responding to the argument that the infant plaintiff's injuries were a foreseeable consequence of the defendants' malpractice, the *Albala* court said, "We determined long ago in a case involving policy issues as sensitive as the ones at bar that foreseeability alone is not the hallmark of legal duty for if foreseeability were the sole test we could not logically confine the extension of liability" *(supra,* at 273). The court also discussed three cases from other jurisdictions which recognized a cause of action for preconception tort, stating in relevant part *(supra,* at 274, n):* "The third preconception tort case * * * *Jorgensen v Meade Johnson Labs.* (483 F2d 237), was decided on a products liability theory for which there is strict liability without fault. Under a products liability theory, once a defect in manufacture or design is established or there has been a failure to give adequate notice of foreseeable potential hazards, the liability of the manufacturer is extended to the entire class of persons thereby affected regardless of privity, foreseeability or due care *(Codling v Paglia,* 32 NY2d 330). Accordingly, the neces-

---

■ **1.** Since plaintiffs have not briefed the question of whether parents may recover damages for emotional distress resulting from the birth of an impaired child, we deem plaintiffs' appeal from the dismissal of that cause of action to be abandoned. We reach a similar conclusion with respect to the dismissal of plaintiff Earl Enright's cause of action seeking damages based upon the inability to have a natural healthy child of the marriage.

sity of establishing manageable bounds for liability is conspicuously absent."

Plaintiff contends that based upon the foregoing language, her strict products liability cause of action should be reinstated. Relying upon *Catherwood v American Sterilizer Co.* (130 Misc 2d 872, *affd on opn below* 126 AD2d 978, 980, *appeal dismissed* 70 NY2d 782), defendants contend that New York does not recognize preconception strict products liability. In *Catherwood,* it was held that a child who was born with chromosomal damage, allegedly due to her mother's exposure to a toxic substance during the course of employment and prior to conception, had no cause of action. In so doing, the court concluded that although there may be no need for limitation on liability in most strict products liability cases, such a need exists in exposure and ingestion cases, relying largely upon the policy considerations underpinning the longstanding Statute of Limitations accrual rule which used the date of the injury, not the date of discovery *(supra,* at 874-875). In *Fleishman v Lilly & Co.* (62 NY2d 888, 890), the Court of Appeals refused to alter the old accrual rule and said, "Any departure from the policies underlying these well-established precedents is a matter for the Legislature and not the courts" *(supra,* at 890). In 1986 the Legislature abandoned the old date-of-injury rule and adopted a rather complicated date-of-discovery rule for virtually all toxic torts *(see,* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 214-c [1990 Supp Pamph], at 338-343). We are of the view that this legislative departure from the policies underlying the old rule raises considerable doubt as to the validity of Special Term's reasoning in *Catherwood v American Sterilizer Co. (supra)* which was based largely upon those policies.[2] Nevertheless, since this case is distinguishable on its facts, we need not decide whether to follow the holding in *Catherwood.*

The distinguishing factor is DES. In *Bichler v Lilly & Co.* (55 NY2d 571, 579), the Court of Appeals noted the large number of actions commenced "[i]n the wake of knowledge about the devastation wrought by DES upon the female off-

2. In affirming for the reasons stated at Special Term, the Fourth Department said, "We add only that the legislative enactment of * * * [CPLR 214-c], not in effect when the matter was before Special Term, does not change the result reached herein" (126 AD2d 978). The two dissenting Justices in that case would recognize a preconception strict products liability cause of action due to the fundamental distinction between negligence and strict products liability *(supra,* at 979-980).

spring of the several million pregnant women who ingested the drug over a 25-year period". While recognizing that some of those actions could be "prosecuted within well-established principles of products liability as those principles have been adapted to the manufacturing and marketing of prescription drugs" *(supra,* at 579), the *Bichler* court also said, "Products liability law cannot be expected to stand still where innocent victims face 'inordinately difficult problems of proof' " *(supra,* at 579-580, quoting *Caprara v Chrysler Corp.,* 52 NY2d 114, 123).

The Legislature, too, has displayed substantial flexibility in affording DES victims a remedy. In addition to the aforementioned toxic tort Statute of Limitations (CPLR 214-c), the Legislature enacted a revival statute which opened a one-year "window" for actions for injuries caused by DES and four other toxic substances that were previously barred under the old date-of-injury rule (L 1986, ch 682, § 4). Since plaintiff and other similarly situated infants already had the benefit of the tolling provisions of CPLR 208, the relevance to this case of the Legislature's enactment of the toxic tort statute, including the revival provision, lies in the clear manifestation of deep concern for those injured by toxic substances in general and DES in particular.

The most comprehensive statement of New York policy toward DES litigation can be found in *Hymowitz v Lilly & Co.* (73 NY2d 487, *supra)* wherein the Court of Appeals considered whether nonidentification of the manufacturer precludes recovery for DES-caused injuries and, if not, what theory of liability should be adopted. In resolving the relatively narrow issues under consideration, the court used the following broad unequivocal language to state New York policy *(supra,* at 507-508):

"Indeed, it would be inconsistent with the reasonable expectations of a modern society to say to these plaintiffs that because of the insidious nature of an injury that long remains dormant, and because so many manufacturers, each behind a curtain, contributed to the devastation, the cost of injury should be borne by the innocent and not the wrongdoers. This is particularly so where the Legislature consciously created these expectations by reviving hundreds of DES cases. Consequently, the ever-evolving dictates of justice and fairness, which are the heart of our common-law system, require formation of a remedy for injuries caused by DES * * *.

"We stress, however, that the DES situation is a singular case, with manufacturers acting in a parallel manner to produce an identical, generically marketed product, which causes injury many years later, and which has evoked a legislative response reviving previously barred actions."

Based upon this policy favoring a remedy for DES-caused injuries, and upon the conspicuous absence of the necessity of establishing manageable bounds for liability under a strict products liability theory *(Albala v City of New York,* 54 NY2d 269, 274, n, *supra),* we hold that plaintiff has a cause of action in strict products liability for injuries caused by her mother's exposure to DES prior to plaintiff's conception. Although plaintiff is not a "DES daughter"—one who was exposed to DES while *in utero*—she may be no less a victim of the devastation wrought by DES than her mother, who is a DES daughter, and we see no sound basis for denying plaintiff her day in court along with her mother.

Our holding recognizes that plaintiff has a cause of action in strict products liability, a theory of liability adopted by the Court of Appeals in *Codling v Paglia* (32 NY2d 330), and a theory which is separate and distinct from liability based upon negligence *(see, e.g., Victorson v Bock Laundry Mach. Co.,* 37 NY2d 395, 400). In so doing, we have resolved an issue of first impression in this court and one which the Court of Appeals plainly left open in *Albala v City of New York (supra,* at 274, n).* Since plaintiff's allegations are sufficient to meet the required elements of a strict products liability cause of action *(see, Codling v Paglia, supra,* at 342), we have sought "to strike the delicate balance between the competing policy considerations" required by the Court of Appeals in *Albala v City of New York (supra,* at 275). We recognize that there is room for rational disagreement with the balance we have achieved, but we have neither fashioned a new remedy out of sympathy nor overturned established legal principles. Nor does our recognition of a strict products liability cause of action in favor of plaintiff guarantee her success, for as plaintiff concedes, she bears the burden of proving all of the elements of a strict products liability cause of action, including the difficult question of proximate cause *(see, Voss v Black & Decker Mfg. Co.,* 59 NY2d 102, 110). This burden, in our view, provides an adequate boundary of the manufacturers' legal responsibility for birth defects caused by DES. To insulate the drug manufacturers by creating an arbitrary generational limitation on the legal responsibility for birth defects

caused by DES, thereby giving the manufacturers security in the knowledge that their liability will be limited to those exposed to DES *in utero* regardless of how many generations are actually injured by DES, would serve only to dilute the economic incentive to turn out safe products, which is the policy consideration most often advanced for imposing strict liability upon the manufacturers of defective products regardless of privity, foreseeability or due care *(see, Sukljian v Ross & Son Co.,* 69 NY2d 89, 95).

WEISS, J. (dissenting). Of the several arguments initially presented in this appeal, we have been left with one issue of major dimension which appears to be of first impression for this court. Simply stated, the issue is whether liability based on the alleged use of a product during pregnancy can be extended to future generations of plaintiffs, not yet conceived, who themselves never had contact with the product. The majority, in what appears to me to be an example of judicial overreaching, has turned aside the established rule that New York does not recognize preconception tort liability under common-law negligence principles *(see, Albala v City of New York,* 54 NY2d 269), then extracted selective portions from two cases grounded in strict products liability *(Bichler v Lilly & Co.,* 55 NY2d 571; *Hymowitz v Lilly & Co.,* 73 NY2d 487, *cert denied* — US —, 110 S Ct 350), added the enactment of the revival statute creating a one-year "window" for actions for injuries allegedly caused by five toxic substances, including the drug diethylstilbestrol (hereinafter DES), all of which were previously barred under the date-of-injury rule *(see,* L 1986, ch 682, § 4), and somehow arrived at the conclusion that plaintiff Karen Enright (hereinafter plaintiff), who never had contact with DES, has a cause of action in strict products liability because her grandmother allegedly ingested the drug while pregnant with plaintiff's mother. Put another way, plaintiff is a third-generation plaintiff alleging injuries resulting from her grandmother's ingestion of DES. I find no authority whatever in this State to support a cause of action for preconception tort in a third-generation context for strict products liability. Because I believe the Justices of this court should not assume a legislative mode to fashion a new remedy for this alleged wrong, I respectfully dissent.

In *Albala v City of New York (supra),* the Court of Appeals held that a tort committed against the mother of a child not yet conceived does not give rise to a cause of action in favor of

that child for any injuries the child may suffer during its period of gestation attributable to the mother's injury before conceiving the child. In its refusal to extend a hospital's liability for medical malpractice in perforating the uterus during the mother's abortion so as to permit recovery by a child conceived four years after the alleged malpractice, the court held that recognition of such a cause of action under those circumstances would require the extension of traditional tort concepts beyond manageable bounds. *Albala* remains the law in New York with respect to cases involving common-law negligence, including medical malpractice.[1]

In *Bichler v Lilly & Co. (supra)* a "DES daughter", i.e., one whose mother ingested DES during pregnancy, recovered damages for injuries she developed 17 years after her birth. In its affirmance, the Court of Appeals held that the trial court's instructions to the jury concerning the manufacturer's liability on a concerted action theory for injuries caused became the governing law of the case, no exception having been taken thereto, and that, in the light of those instructions, there was sufficient evidence to support the jury's verdict.[2] The prevailing plaintiff had directly come in contact with DES when the drug was ingested by her mother during pregnancy.

After the *Bichler* decision, the Fourth Department affirmed a decision of Supreme Court in *Catherwood v American Sterilizer Co.* (126 AD2d 980, *appeal dismissed* 70 NY2d 782), in which a mother was exposed to ethylene oxide prior to conception of a child subsequently born with chromosomal damage. In denying liability for genetic injury allegedly caused to the child, Supreme Court had found that the "policy need for limitation of liability in exposure and ingestion cases" called for the same result as in DES cases *(Catherwood v American Sterilizer Co.,* 130 Misc 2d 872, 875, *affd* 126 AD2d 980, *appeal dismissed* 70 NY2d 782).

---

1. I disagree with plaintiff's contention that the footnote on page 274 in *Albala* can be seen as an unequivocal endorsement of preconception tort litigation in strict products liability cases. The three cases cited in the footnote are all foreign cases, two of which were found to be inapposite, and any reliance on the third held to be misplaced *(Albala v City of New York,* 54 NY2d 269, 274, n).

2. "Concerted action liability rests upon the principle that '[a]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him' " *(Bichler v Lilly & Co.,* 55 NY2d 571, 580, quoting Prosser, Torts § 46, at 292 [4th ed]).

Plaintiff has placed great emphasis upon certain of the language used by the Court of Appeals in *Hymowitz v Lilly & Co.* (73 NY2d 487, *supra).* While it cannot be gainsaid that the court recognized the Draconian effects DES had upon those who used the drug and of the need for a remedy for those injuries *(supra,* at 507), the decision does not, as plaintiff would have us believe, either create a new cause of action in favor of third-generation DES plaintiffs or extend existing principles of strict products liability to such a class who themselves never came in contact with the drug. The *Hymowitz* case decided two distinctly stated issues, and no more than those issues, namely: (1) the market-share theory of apportionment of liability among all manufacturers of DES is to be employed in New York, and (2) the revival statute, as it pertains to DES cases, has a rational basis and is constitutional. The issue of third-generation plaintiffs is not a part of that case and can have no role in this case. Indeed, the Court of Appeals explicitly stated that the Legislature's attention was specifically drawn to DES and that any change in the exposure rules was the role of the Legislature *(supra,* at 514, citing *Fleishman v Lilly & Co.,* 62 NY2d 888, *cert denied* 469 US 1192), and further, that the "Legislature acted within its broad range of discretion in enacting the law" *(supra,* at 515). The case of *Fleishman v Lilly & Co. (supra)* involved claims that cancer developed years after the use of DES, one by a direct user of the drug and the other by an *in utero* plaintiff exposed when her mother ingested DES. In affirming dismissal of both cases as time barred, the Court of Appeals refused to extend the Statute of Limitations for medical malpractice claims, stating that "[a]ny departure from the policies underlying these well-established precedents is a matter for the Legislature and not the courts" *(supra,* 62 NY2d, at 890).

In its enactment of the toxic tort revival statute, the Legislature first defined "exposure" as any "direct or indirect exposure by absorption, contact, ingestion, inhalation or injection" (CPLR 214-c [1]). The operative effect of the statute is to revive every action for personal injury, injury to property or death "caused by the *latent effects of exposure* to [diethylstilbestrol] *upon or within the body"* which is time barred as of the effective date of the act and permit an action to be commenced within one year from the effective date of the act (CPLR 214-c [2], [3], [4] [emphasis supplied]). In *Besser v Squibb & Sons* (75 NY2d 847, *affg on opn below* 146 AD2d 107), the Court of Appeals affirmed on the opinion of Justice

Sullivan of the First Department.[3] The case speaks to exposure to DES *upon or within the body.* I believe the statute and *Besser· v Squibb & Sons (supra)* instruct that some direct contact between a plaintiff and DES must exist as a prerequisite to a cause of action under principles of strict products liability.

I perceive that defendants owed a duty to those who used DES, including those persons *in utero* at the time of such use. I fail to recognize a duty to generations not yet conceived who themselves would never come into contact with the drug. "While a court might impose a duty where none existed before, extreme care must always be exercised" in so doing *(Vogel v West Mountain Corp.,* 97 AD2d 46, 49; *see, Pulka v Edelman,* 40 NY2d 781, 786). "While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred" *(Albala v City of New York,* 54 NY2d 269, 274, *supra,* citing *Howard v Lecher,* 42 NY2d 109). The tragic catastrophe engulfing plaintiff's life should neither tempt nor encourage Judges to embrace a personal choice form of rationalization, "results-first, premises-to-follow" (Bork, The Tempting of America, at 264 [1990]). I find no indication, direct or by inference, demonstrating a legislative intent to extend the provisions of the statute to generations of plaintiffs who were unconceived at the time a forbearer was exposed to one of the five toxic substances in the statute.

For these reasons, I would affirm Supreme Court's order.

MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur with CASEY, J. P.; WEISS, J., dissents and votes to affirm in an opinion.

Order modified, on the law, with costs to plaintiffs, by reversing so much thereof as granted defendants' motions dismissing the third cause of action in the complaint; said motions denied and, as so modified, affirmed.

---

**3.** In *Besser v Squibb & Sons* (75 NY2d 847, *affg* 146 AD2d 107), the plaintiff's mother, a Pennsylvania resident, ingested DES 33 years earlier while she was pregnant with the plaintiff who became ill with cervical cancer at age 20 while residing in New Jersey. The issue in *Besser* was whether the toxic tort revival statute overcame the "borrowing statute" (CPLR 202) to permit the plaintiff who had no contacts with this State, save for maintaining residence here prior to commencing suit, to maintain suit against the drug manufacturer.