■ CAROL CARUCCI et al., Appellants, v MAIMONIDES MEDICAL CENTER et al., Respondents. [641 NYS2d 725] —In an action to recover damages, *inter alia,* for medical malpractice, the plaintiffs appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Clemente, J.), dated February 28, 1994, as granted the defendants' motion to dismiss the complaint as barred by the Statute of Limitations.

Ordered that the order is affirmed insofar as appealed from, with costs.

In a medical malpractice action, a defendant may be estopped from pleading the Statute of Limitations where the plaintiff was induced by fraud, misrepresentation, or deception to refrain from filing a timely action. However, it must be established that the defendants knew or had reason to know of the facts of their malpractice and of the injury suffered in consequence thereof. Also, knowing them to be false, the defendants thereafter would have to have made material, factual misrepresentations to the patient with respect to the subject matter of the malpractice on which the patient justifiably relied (*Simcuski v Saeli,* 44 NY2d 442). We agree with the Supreme Court that the plaintiffs failed to present sufficient evidence to establish these elements. Thus, the defendants were not equitably estopped from asserting the Statute of Limitations.

The exception to the Statute of Limitations whereby a patient who discovers a foreign object in his or her body is given one year from the date of the object's discovery (or one year from the discovery of facts which would reasonably lead to such discovery) to commence a malpractice action (*see,* CPLR 214-a) has no applicability in the case at bar.

We decline, as a matter of policy, to recognize the cause of action asserted on behalf of the infant plaintiff as it would be an extension of traditional tort concepts beyond manageable

bounds (*see, Enright v Eli Lilly & Co.,* 77 NY2d 377; *Albala v City of New York,* 54 NY2d 269). Balletta, J. P., Rosenblatt, Pizzuto and Joy, JJ., concur.

Altman, J., concurs in part and dissents in part and votes to modify the order appealed from by deleting the provision thereof which granted the branch of the defendants' motion which was to dismiss the cause of action asserted on behalf of Justine Carucci, denying that branch of the defendants' motion, and reinstating the complaint on behalf of Justine Carucci, with the following memorandum: In 1982 the plaintiff Carol Carucci gave birth to her first child. At the time, it was determined that Mrs. Carucci had Rh negative blood and an injection of RhoGAM was administered. RhoGAM suppresses the immune response of an Rh negative woman to the Rh positive red blood cells of a fetus. It should be administered within 72 hours of delivery of an Rh positive baby in order to prevent the formation of antibodies which can adversely affect a subsequently-conceived child who has Rh positive blood.

Following the birth of her second child in 1984, RhoGAM was not administered although Mrs. Carucci claims she requested an injection. After repeated inquiries, she was told the injection was not required. In February 1987, her third child, Justine, was born prematurely with hemolytic disease and pulmonary problems allegedly attributable to the failure to administer RhoGAM after the second birth. This medical malpractice action was then commenced in or about September 1987. The complaint asserts several causes of action on behalf of Mrs. Carucci, a single cause of action on behalf of Justine, and two derivative causes of action on behalf of Mr. Carucci.

While I agree with my colleagues in the majority that Mr. and Mrs. Carucci's causes of action are barred by expiration of the Statute of Limitations (*see, Schroeter v Paley,* 203 AD2d 551), I conclude that the claim asserted on behalf of the infant plaintiff states a cognizable cause of action and is not time barred. Contrary to the majority's conclusion, recognition of the very specific claim asserted in this case would not extend traditional tort concepts beyond manageable bounds. Because I find the infant's cause of action in this case to be distinguishable from the cause of action which the Court of Appeals declined to recognize in *Albala v City of New York* (54 NY2d 269), I do not believe that *Albala* bars recovery here. Contrary to the opinions of certain courts in other jurisdictions and at least one commentator (*see, Lough v Rolla Women's Clinic,* 866 SW2d 851, 853 [Mo]; *McNulty v McDowell,* 415 Mass 369, 372, 613 NE2d 904, 906; Prosser and Keeton, Torts § 55, at 369 [5th

ed]), I do not read *Albala* as imposing an absolute no-duty rule in preconception tort cases (*see, Enright v Eli Lilly & Co.,* 77 NY2d 377, 394, Hancock, J., dissenting).

In *Albala,* the mother's uterus was perforated during an abortion. Her subsequently-conceived child was born with brain damage which had allegedly been caused by the defendant's malpractice in negligently performing the abortion. The Court of Appeals concluded that recognition of a cause of action for preconception tort "under [the] circumstances" of that case "would require the extension of traditional tort concepts beyond manageable bounds" and "would have the undesirable impact of encouraging the practice of 'defensive medicine'" (*Albala v City of New York, supra,* at 271-272, 274). The Court was concerned both that the parameters of such liability could not be readily defined and that a physician would be faced with the dilemma of whether to administer treatment which would be beneficial to the mother, but might harm future offspring.

The case before us does not present those same public policy issues. RhoGAM is specifically designed to protect a later-conceived child from injuries that are likely to occur if the drug is not administered. It has no other purpose. The administration of RhoGAM is of absolutely no benefit to the mother, and does not cause her any harm (*see, Lough v Rolla Women's Clinic, supra; Walker v Rinck,* 604 NE2d 591 [Ind]). Thus, unlike the situation in *Albala* where the malpractice resulted in injury to the mother which could potentially harm a future child, here the mother sustained no injury (*compare, Enright v Eli Lilly & Co.,* 77 NY2d 377, *supra*). Recognition of the child's cause of action in *Albala* could have led to unlimited potential liability against any individual who committed a tort against the mother. Here, liability would be more readily limited as the liability imposed under these circumstances is not amenable to extension by analogy to a variety of situations. There are no potential "rippling effects" which could "extend for generations" (*compare, Enright v Eli Lilly & Co., supra,* at 387). Rather, the effect of the failure to administer RhoGAM manifests itself in the next-born Rh-positive child.

Further, the administration of RhoGAM presents no conflict for the physician as it has no impact on the mother's health. Consequently, the physician is not placed in the position of foregoing treatment for the mother to avoid the risk of injury to a future child (*see, Walker v Rinck, supra*).

Absent the public policy concerns underlying the *Albala* decision, the issue then becomes whether Mrs. Carucci's physi-

cians owed a duty to Justine, who was not yet conceived. "The question of duty * * * is best expressed as 'whether the plaintiff's interests are entitled to legal protection against the defendant's conduct' " (*Pulka v Edelman*, 40 NY2d 781, 782, citing Prosser, Torts § 53, at 325 [4th ed]) or, in other words, "whether the defendant stands in any such relation to the plaintiff as to create any legally recognized obligation of conduct for the plaintiff's benefit" (Prosser and Keeton, Torts § 42, at 274 [5th ed]).

In a case such as this where the treatment is specifically designed to guard against a particular known risk to a particular future human being, it is appropriate to recognize an obligation on the part of a defendant to a subsequently-conceived child who is directly injured as a result of the failure to provide that very treatment (*see, Monusko v Postle*, 175 Mich App 269, 437 NW2d 367). The duty can be considered a contingent one which matures upon the birth of the child. Alternatively, as analyzed by the Supreme Court of Indiana, the infant plaintiff is akin to a third-party beneficiary of a contract arising out of the consensual relationship between the mother and her doctor. The doctor has actual knowledge that the treatment is being provided for the sole benefit of the future child (*see, Walker v Rinck, supra,* at 594-595). Clearly, the injury to the child in such a case is foreseeable. Therefore, I would conclude that a cognizable cause of action has been pleaded. While obviously not dispositive, the other jurisdictions which have considered this very specific claim have consistently recognized such a cause of action (*see, Lough v Rolla Women's Clinic,* 866 SW2d 851, *supra; Walker v Rinck, supra; see also, Empire Cas. Co. v St. Paul Fire & Mar. Ins. Co.,* 764 P2d 1191 [Colo]).

Finally, contrary to the conclusion reached by the Supreme Court, the infant plaintiff's cause of action is not time barred (*see,* CPLR 208).