**Andrew N. JORGENSEN, as special administrator of the Estate of Kimberly D. Jorgensen, Deceased, and Pamela B. Jorgensen, By and Through her father and next friend, Andrew W. Jorgensen, Plaintiffs-Appellants,**

v.

**MEADE JOHNSON LABORATORIES, INC., a corporation, d/b/a Oracon, Defendant-Appellee.**

No. 72–1240.

United States Court of Appeals, Tenth Circuit.

July 25, 1973.

Rehearing Denied and Rehearing En Banc Denied Oct. 1, 1973.

238

Murray E. Abowitz, Oklahoma City, Okl. (Don Manners, Oklahoma City, Okl., on the brief), for plaintiffs-appellants.

Alex Cheek, Oklahoma City, Okl. (John D. Cheek and William C. McAlister of Cheek, Cheek & Cheek, Oklahoma City, Okl., on the brief), for defendant-appellee.

Before HILL, HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

This diversity suit for personal injuries is brought against Meade-Johnson Laboratories, Inc., the plaintiff claiming that the pharmaceutical company is liable for deformities of his Mongoloid twin daughters. The claim is that the company's oral contraceptive product, Oracon, used by the plaintiff's wife, caused the Mongoloid condition and that the company is liable under principles of strict liability in tort, negligence and breach of express and implied warranties. The district court dismissed the action for failure to state a claim for relief. 336 F.Supp. 961. Due to the favorable consideration which must be given a complaint on the motion, and principles of Oklahoma law on such bases of recovery, we are unable to agree with the district court.

The complaint essentially alleges these facts. One claim is asserted by the father as administrator for the estate of one twin girl who died at the age of three and one-half years. The other claim is maintained by him as next friend of the surviving twin. The claims with respect to both children are for their personal injuries including retardation, deformity, pain and suffering. The claim by the administrator is in the nature of a survival action for such personal injury, pain and suffering, and does not appear to include any allegations of pecuniary loss for a wrongful death suit.[1]

The complaint avers that on or about May 1, 1966, and at different times thereafter, the mother of the twins purchased the company's Oracon birth control pills and used them for several consecutive months; that immediately prior to November 1, 1966, she ceased taking the pills and became pregnant; and that on July 19, 1967, she gave birth to the Mongoloid twins, Kimberly and Pamela. Kimberly died in March, 1971. It is claimed that the company is strictly liable in tort and for negligence and breach of its warranties in the manufacture and sale of the birth control pills.

The complaint specifically alleges that the company expressly and impliedly warranted that the pills were safe and

1. A survival action for injury, pain and suffering is maintainable in Oklahoma under 12 O.S.A. § 1051, and is distinct from a wrongful death action for pecuniary loss under 12 O.S.A. § 1053. St. Louis & San Francisco R. Co. v. Goode, 42 Okl. 784, 142 P. 1185, 1188.

fit for human consumption. It avers that the company breached its warranties of fitness and safety in that the pills contained compounds and chemicals dangerous and injurious to humans, and in particular the minor plaintiffs. It alleges that the defendant failed to warn the plaintiff's wife and to label the pills, setting forth the dangerous effects when orally taken. The harmful effects are alleged specifically as follows with respect to the claim for Pamela, the surviving twin:

"Specifically, the aforesaid birth control pills altered the chromosome structure within the body of the plaintiff's wife, Alta J. Jorgensen, and as a result thereof, a Mongoloid deformity was created within the viable fetus of the minor plaintiffs during the period of development prior to birth.

"The plaintiff further alleges and states that as a direct and proximate result of the negligence and breach of warranty on the part of the defendant, the viable fetus of the minor plaintiffs were exposed to the altered chromosome structure within the mother's body thereby inducing the condition of monogolism, and said minor plaintiff, Pamela B. Jorgensen, suffered severe, excruciating, and constant pain and suffering and mental retardation and deformity as a result of the aforesaid exposure. In addition, the minor plaintiff, Pamela B. Jorgensen, has sustained permanent injury as a result thereof. . . ."

The claim as to the deceased twin, Kimberly, adopts the above allegations and makes other similar averments and seeks damages for retardation, deformity, pain and suffering.

As stated the district court sustained a motion to dismiss for failure to state a claim. Its memorandum opinion, relying on Morgan v. United States, 143 F.Supp. 580 (D.N.J.), concluded that no such cause of action exists in Oklahoma because the tortious conduct occurred before conception of the children allegedly injured. The court also said that any such right, arising out of injury to the

chromosome structure of the mother prior to conception, should be created by the legislature. 336 F.Supp. at 962.

■ The views of a District Judge on the unsettled law of his State are persuasive and are ordinarily accepted. Vaughn v. Chrysler Corp., 442 F.2d 619, 621 (10th Cir.), cert. denied, 404 U.S. 857, 92 S.Ct. 106, 30 L.Ed.2d 98. However we must disagree with the trial court here since from our examination of Oklahoma law, and giving the complaint favorable consideration on the motion, we are convinced that the dismissal was incorrect. See Gooding v. Wilson, 405 U.S. 518, 524, 92 S.Ct. 1103, 31 L.Ed.2d 408; Darby's Estate v. Wiseman, 323 F.2d 792, 795–796 (10th Cir.).

■ We are admonished by the Supreme Court that the complaint be given most favorable consideration in ruling on a motion to dismiss. It should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80; Keenan v. Looney, 227 F.2d 878 (10th Cir.).

As stated above, in part the district court reasoned that there could be no right of the child arising out of preconception injury to the chromosome structure of the mother, until legislative recognition is given to such a right. However, in giving the complaint the favorable consideration required we must weigh with the remainder of the complaint the allegations that "a Mongoloid deformity was created within the viable fetus of the minor plaintiffs during the period of development prior to birth . . ." and that the ". . . viable fetus of the minor plaintiffs were exposed to the altered chromosome structure within the mother's body . . ." Thus the pleading should not be construed as being limited to effects or developments before conception.

Moreover regardless of allegations as to when or how the effects developed,

the case should not be viewed from the standpoint of alleged effects on the mother, who is not suing, but from that of the twins and the injuries allegedly inflicted on them. If the view prevailed that tortious conduct occurring prior to conception is not actionable in behalf of an infant ultimately injured by the wrong, then an infant suffering personal injury from a defective food product, manufactured before his conception, would be without remedy. Such reasoning runs counter to the various principles of recovery which Oklahoma recognizes for those ultimately suffering injuries proximately caused by a defective product or instrumentality manufactured and placed on the market by the defendant. See Jackson v. Cushing Coca-Cola Bottling Co., 445 P.2d 797, 799 (Okl.); Barnhart v. Freeman Equipment Co., 441 P.2d 993, 999 (Okl.); Marathon Battery Co. v. Kilkpatrick, 418 P.2d 900, 914–915 (Okl.); White Motor Corporation v. Stewart, 465 F.2d 1085, 1088–1089 (10th Cir.); Marshall v. Ford Motor Co., 446 F.2d 712, 714 (10th Cir.); Speed Fastners, Inc. v. Newsom, 382 F. 2d 395, 398 (10th Cir.); see also Gordon, The Unborn Plaintiff, 63 Mich.L. Rev. 579 (1965).[2]

We are persuaded that the Oklahoma courts would treat the problem of the injuries alleged here as one of causation and proximate cause, to be determined by competent medical proof.[3] Such personal injury cases raise factual issues turning on the medical evidence. See Jackson v. Cushing Coca-Cola Bottling Company, 445 P.2d 797, 799 (Okl); Hill v. Culligan Soft Water Service Company, 386 P.2d 1018, 1021 (Okl.); Oklahoma Natural Gas Co. v. Graham, 188 Okl. 521, 111 P.2d 173, 174; see also Sinkler v. Kneale, 401 Pa. 267, 164 A.2d 93, 96 (treating the cause of a Mongoloid condition as a factual one requiring medical proof); Womack v. Buchhorn, 384 Mich. 718, 187 N.W.2d 218, 219, 222 (referring to advances in medical knowledge in the context of a suit for prenatal injuries); Smith v. Brennan, 31 N.J. 353, 157 A.2d 497, 503; Bennett v. Hymers, 101 N.H. 483, 147 A.2d 108, 110. And such treatment of the problem would accord with the predominant view that an action may be maintained for prenatal injuries negligently inflicted if the injured child is born alive. See Sinkler v. Kneale, supra, 164 A.2d at 94–96, and cases there collected; Womack v. Buchhorn, supra, 187 N.W.2d at 220–222, and cases there collected; Annotation, Liability For Prenatal Injuries, 40 A.L.R.3d 1222, 1228.

We feel that the trial court was incorrect in concluding that recognition of such a cause of action must await legislative action.[4] In Oklahoma the basic

---

2. For these reasons and others to follow we are satisfied that the reasoning in the Federal Tort Claims Act decision under Pennsylvania law in Morgan v. United States, supra, relied on by the district court, would not be applied by the Oklahoma courts in the case before us.

3. We, of course, express no opinion on the merits of plaintiff's factual and medical claims. Various hypotheses concerning the etiology of Down's Syndrome, or as it is more commonly called, Mongolism, have been discussed in the literature. See Benda, Down's Syndrome; Mongolism and Its Management (rev. ed. 1969); Lilienfeld, Epidemiology of Mongolism (1969); "Maternal Health and Mongolism" Lancet, 1972, 312–315. For law review articles dealing extensively with the subject of prenatal tort law see Gord-

on, The Unborn Plaintiff, 63 Mich.L.Rev. 579 (1965); Note, The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries, 110 U. of Pa.L.Rev. 553 (1962).

4. In this connection the district court's memorandum cites Padillow v. Elrod, 424 P.2d 16 (Okl.), denying recovery in a wrongful death action for prenatal injury to a child that was stillborn. The memorandum refers to a statement by the Oklahoma Court that since an earlier wrongful death decision to the same effect had not been altered by the legislature, the older case would still be followed. See also State Department of Highways v. Bowles, 472 P.2d 896, 902 (Okl.).

We feel that such an interpretation from legislative inaction after a court decision does not support the view that

principles of strict liability in tort, negligence and warranty have been primarily recognized by court decision, even though substantially new bases of recovery were afforded. See, e. g., Barnhart v. Freeman Equipment Co., 441 P.2d 993 (Okl.); Marathon Battery Co. v. Kilpatrick, supra; Southwest Ice & Dairy Products Co. v. Faulkenberry, 203 Okl. 279, 220 P.2d 257; Crane Co. v. Sears, 168 Okl. 603, 35 P.2d 916; Lone Star Gas Co. v. Parsons, 159 Okl. 52, 14 P.2d 369, 371–372 (recognizing the doctrine of attractive nuisance as a basis of recovery for the minor's personal injuries); and see Vaughn v. Chrysler Corp., supra; Marshall v. Ford Motor Co., supra. Moreover the right to sue for prenatal injury has generally evolved from court decisions. See Sinkler v. Kneale, supra, 164 A.2d at 94–96; Womack v. Buchhorn, supra, 187 N.W.2d at 220–221; Annotation, Liability for Prenatal Injuries, 40 A.L.R.3d 1222, 1226, et seq.

The appellee relies on Padillow v. Elrod, 424 P.2d 16 (Okl.), and Howell v. Rushing, 261 P.2d 217 (Okl.). The district court was of the view that these holdings are inapplicable, and we agree. The cases held only that a wrongful death action may not be maintained for prenatal injuries where a child is stillborn. The *Padillow* opinion clearly shows that the Oklahoma Court was not considering or ruling on a case where an injured child is born alive. 424 P.2d at 18. Moreover the claims involved in our case are not for wrongful death, as the *Padillow* and *Howell* cases were, but for

retardation, deformity, pain and suffering during their lifetime.

■ For these reasons we conclude that the complaint should not have been dismissed. We are convinced the Oklahoma courts would afford an opportunity to present a case on these allegations. It does not appear beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80. Accordingly the judgment of dismissal is vacated and the cause is remanded for further proceedings.

Before LEWIS, Chief Judge and HILL, SETH, HOLLOWAY, McWILLIAMS, BARRETT, and DOYLE, Circuit Judges.

## ON PETITION FOR REHEARING

This matter comes on for consideration of the petition for rehearing and suggestion for rehearing en banc filed by the appellee.

Upon consideration whereof, the petition for rehearing is denied by Circuit Judges Hill, Holloway and Barrett, to whom the case was argued and submitted.

The petition for rehearing having been denied by the original panel to whom the case was argued and submitted and no member of the panel nor judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, Rule 35, Federal Rules of Appellate Procedure, the petition for rehearing en banc is denied.

the Oklahoma courts would refuse to entertain a suit like this under warranty and tort principles, without legislative sanction. The recognition of such principles of recovery has not been limited to either legislative or judicial action in Oklahoma, but has proceeded by court decisions, such as those cited in the text,

infra, and by statute. See, *e. g.*, 12A O.S.A. §§ 2–313, 314 and 315, dealing with express and implied warranties, and Speed Fastners, Inc. v. Newsom, supra, applying the implied warranty of merchantability as provided by the Uniform Commercial Code.