EMMA M. RENSLOW, Individually and as Mother and Next Friend of Leah Ann Renslow, a Minor, Plaintiff-Appellant, *v.* MENNONITE HOSPITAL *et al.*, Defendants-Appellees.

Fourth District   No. 13417

Opinion filed June 10, 1976.—Rehearing denied August 24, 1976.

Strodel & Kengery Associates, of Peoria (Robert C. Strodel and Edward R. Durree, of counsel), for appellant.

Heyl, Royster, Voelker & Allen, of Peoria (Lyle W. Allen, Denis J. Weber, and Douglas Stephens, Jr., of counsel), for appellee Mennonite Hospital.

Costigan, Wollrab, Fraker, Wochner, and Neirynck, of Bloomington, for appellee Hans Stroink, M.D.

Mr. JUSTICE GREEN delivered the opinion of the court:

On January 22, 1975, complaint was filed by Emma Murphy Renslow on her own behalf and on behalf of her minor daughter Leah Ann Renslow seeking damages for personal injuries sustained by both Emma and Leah Ann as the result of the allegedly negligent conduct and willful and wanton misconduct of the defendants Mennonite Hospital and Dr. Hans Stroink. Counts I-V of the complaint involved the allegations of Emma Murphy Renslow on her own behalf, and those counts are not before this court on appeal.

In Counts VI-X, Emma Murphy Renslow, as mother and next friend of Leah Ann Renslow, sought damages for personal injuries allegedly suffered by Leah Ann. Those counts alleged, in part, that in October of 1965 when Emma Murphy (Renslow) was age 13 years she was admitted to the defendant hospital where the defendant doctor headed the laboratory division; that in the course of her treatment at the defendant hospital on October 8 and again on October 9, 1965, Emma was given two transfusions of 500 c.c. each of whole blood; that the defendant hospital and the defendant doctor and their agents were in complete control of the selection of the blood to be transfused into Emma; that Emma's blood type was and still is type A-RH negative; that the blood transfused into her was, however, type A-RH positive; that the transfusion of the wrong type of blood caused the sensitization of Emma's blood; that Emma had no knowledge of the sensitization of her blood until December of 1973 when such condition was discovered during routine testing of her blood during her state of pregnancy; that medical diagnosis determined that the life of her unborn child was in jeopardy; that Emma was hospitalized on March 25, 1974, and labor was induced resulting in the premature live birth of her daughter Leah Ann; that the newborn Leah Ann was jaundiced and required immediate complete exchange transfusion of her blood; that a second complete exchange transfusion of Leah Ann's blood was necessary; and that, as a consequence of the sensitization of her mother's blood, Leah Ann Renslow suffered personal injuries including permanent damage to her nervous system and brain.

The defendant hospital filed a motion to dismiss the complaint, and that motion included the ground that Leah Ann was not in being at the time of the allegedly injurious occurrences. The defendant doctor filed a motion to strike the complaint, and that motion included the ground that there was no right of action in Leah Ann. The substance of the defendants' contentions was that they owed no duty of care to Leah Ann in 1965. After a hearing on the motions to dismiss and to strike, the trial court entered a written order dismissing Counts VI-X because the person for whom those counts sought relief was not conceived at the time of the alleged infliction

of injury. By supplemental order, the trial court entered a finding pursuant to Supreme Court Rule 304 that there was no just cause for delaying an appeal of the dismissal of Counts VI-X. Emma Murphy Renslow, as mother and next friend of Leah Ann Renslow, appeals from the orders dismissing Counts VI-X of the complaint.

We begin our analysis by tracing the development of the law relating to personal injuries to unborn children. At common law, the courts did not recognize a right of action for prenatal personal injuries. The reason for such a result was that the unborn child was not viewed as having a separate, independent existence apart from its mother sufficient to permit a cause of action on behalf of the child. Such reasoning and result were adopted by the Supreme Court of Illinois in 1900 in *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 56 N.E. 638. In *Allaire*, the minor child by his mother filed a complaint against the defendant hospital alleging that he had suffered permanent physical injuries as the consequence of the negligent operation of an elevator in which the mother was a passenger while the minor was a viable unborn child. The trial court sustained a general demurrer to the complaint, and that judgment was affirmed on appeal to the Supreme Court.

■■ In other jurisdictions, the law began to change with respect to the right of action for prenatal personal injuries, but *Allaire* remained the law in Illinois until the Supreme Court was again confronted with the issue in 1953 in *Amann v. Faidy*, 415 Ill. 422, 114 N.E.2d 412. The Supreme Court took that opportunity to overrule *Allaire*. In *Amann*, the question was whether a cause of action could be maintained for the wrongful death of a child who was negligently injured while a viable fetus and who, after his birth, died as a result of such injury. The administratrix of the estate of the deceased minor had filed a complaint alleging that the defendant's negligent operation of his motor vehicle caused a collision with the automobile driven by the pregnant mother of the deceased child, and, further, caused personal injuries to the viable fetus which resulted in the death of the child soon after his birth. The Supreme Court allowed the action for wrongful death. In *Rodriguez v. Patti*, 415 Ill. 496, 114 N.E.2d 721, the Supreme Court extended the right of action for prenatal personal injuries to an infant who was allegedly injured while a viable fetus and who survived. Prosser has noted that this modern position has been followed by all of the jurisdictions which have considered the issue. Prosser, Law of Torts 336 (4th ed. 1971).

■■ The appellate court has expanded the right of action for prenatal personal injuries to allow a surviving infant to bring an action for injuries even though such injuries may have been inflicted at a time when the unborn child was not viable. (*Sana v. Brown*, 35 Ill. App. 2d 425, 183 N.E.2d 187; *Daley v. Meier*, 33 Ill. App. 2d 218, 178 N.E.2d 691.) If the

injury is inflicted upon the unborn child at a time when the fetus is not viable and if the child is stillborn, an action for wrongful death will not lie. (*Rapp v. Hiemenz*, 107 Ill. App. 2d 382, 246 N.E.2d 77.) However, the Supreme Court has allowed an action for wrongful death in a case in which the injury was alleged to have been inflicted upon a viable unborn child even though the child was stillborn. (*Chrisafogeorgis v. Brandenberg*, 55 Ill. 2d 368, 304 N.E.2d 88.) The Supreme Court has not had the opportunity to deal with the question of whether the injury must be to a viable fetus in order for a surviving infant to maintain an action for prenatal personal injuries. The only case decided by the Supreme Court involving the right of action for prenatal personal injuries (in contrast to wrongful death actions) was *Rodriquez*, in which the injuries were alleged to have occurred to a viable unborn child.

In the present case, the tortious conduct is alleged to have occurred in 1965, but the child was not conceived until sometime in 1973 and was not born until 1974. This case is, therefore, unlike the cases cited above, for none of them involve allegedly tortious conduct occurring prior to the time of conception of the injured child.

Although the trial court's reason for dismissing Counts VI-X of the complaint was that the person for whom those counts sought relief was not conceived at the time of the alleged infliction of injury, the order apparently means that the child was not conceived at the time of the alleged infliction of injury *to the mother*. The child herself could not possibly have suffered personal injuries prior to the time she was conceived.

The parties view this case as one of first impression in Illinois. The plaintiff contends that there is a right of action in a child for prenatal personal injuries resulting from tortious conduct occurring before the conception of the injured child, but the defendants argue to the contrary. The defendant Mennonite Hospital cites *Morgan v. United States* (D.N.J. 1956), 143 F. Supp. 580, as a case strikingly similar to the instant case. With respect to the alleged facts, the two cases are quite similar. In *Morgan*, the second count of a complaint alleged that a woman received an improper blood transfusion in an army hospital in Pennsylvania in February of 1953, that she gave birth to a child in June of 1955, and that the child suffered permanent physical injuries due to the improper blood transfusion. The opinion stated:

> "When the tortious conduct occurred William Morgan had not yet been conceived. He was then neither a viable fetus nor *en ventre sa mere*. The alleged tort occurred in Pennsylvania. Whether a cause of action accrued to William Morgan is governed by the law of that state. 28 U.S.C.A., Sec. 1346(b). No cause of action accrued in favor of William Morgan. (*Berlin v. J. C. Penney Co, Inc.*, 1940,

339 Pa. 547, 16 A.2d 28.) The allegations of the second cause of action alleged in the complaint failed to state a claim against the defendant upon which relief can be granted." (143 F. Supp. 580, 584.)

The second count was dismissed. The reliance of the defendant hospital on *Morgan* seems misplaced. The case of *Berlin v. J. C. Penney Co.* cited in *Morgan*, is based upon the former law of Pennsylvania which denied a right of action for prenatal personal injuries. *Berlin* has been effectively overruled by *Sinkler v. Kneale* (1960), 401 Pa. 267, 164 A.2d 93. Furthermore, *Berlin* relied upon precedents from four other jurisdictions including the Illinois decision in *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 56 N.E.2d 638. *Allaire* has been overruled by *Amann v. Faidy*, 415 Ill. 422, 114 N.E. 412, and *Sinkler* points out that the decisions in the other three jurisdictions have been overruled as well. *Morgan* is not sound authority for the defendants' position.

Both defendants cite *Hornbuckle v. Plantation Pipe Line Co.* (1956), 212 Ga. 504, 93 S.E.2d 727. However, we believe that the defendants have misinterpreted that case. The defendant hospital asserts that the court in *Hornbuckle* "ruled in favor of the cause of action for a fetus born alive, but only if the right to injuries or the tortious act occurred after conception and affected a viable fetus." That reading is too broad. *Hornbuckle* is not factually analogous to the instant case. In *Hornbuckle*, the petition by the plaintiff child alleged that the child, who is now living, received prenatal personal injuries as the result of the alleged negligent operation of an automobile by the defendant which caused a collision with the automobile in which the plaintiff's then-pregnant mother was riding. The trial court had denied a general demurrer to the petition, but the appellate court had reversed. The Supreme Court of Georgia reversed the appellate court, affirmed the trial court, and allowed the cause of action. As the court stated, "If a child born after an injury sustained at any period of its prenatal life can prove the effect on it of a tort, it would have a right to recover." 93 S.E.2d (212 Ga. 504, 504-05, 727, 728.) The opinion does not limit causes of action for prenatal personal injuries to tortious conduct occurring after conception. It merely makes the point that the injury must be sustained after conception. As we noted earlier, a prenatal personal injury cannot possibly occur prior to the time the child is conceived. *Hornbuckle* is not precedent for the position advocated by the defendants.

Both the plaintiff and the defendants rely heavily on *Jorgensen v. Meade Johnson Laboratories, Inc.* (10th Cir. 1973), 483 F.2d 237. Again, we believe that the defendants have misinterpreted *Jorgensen*. The defendant hospital comments that *Jorgensen* "was decided upon a theory

that there was an injury to someone capable of being injured at the time the tortious conduct occurred." That is not what *Jorgensen* holds. *Jorgensen* is closely analogous to the instant case. In *Jorgensen*, the complaint alleged that a woman had taken oral contraceptives prior to the conception of her twin daughters, that the contraceptives had damaged the chromosome structure of the mother, and that this alteration of the mother's chromosome structure created a Mongoloid deformity within the viable fetus of the twin daughters during the period of their development prior to birth resulting in severe personal injuries or death. Upon the authority of *Morgan v. United States* (with which we have dealt earlier), the district court dismissed the complaint. The circuit court of appeals reversed. The opinion in *Jorgensen* emphasizes that the complaint alleges an injury to a viable fetus. The court then states, "Thus the pleading should not be construed as being limited to effects or developments before conception." (483 F.2d 237, 239.) While the tortious act had allegedly occurred before the children were conceived, they were not alleged to have been injured until after conception. That is precisely what happened here. When analyzed in this manner, *Jorgensen* and the present case are simply cases involving actions for prenatal personal injuries. The only peculiarity is that both cases involve prenatal injuries which are alleged to have resulted from preconception negligent conduct. *Jorgensen* supports the position of the plaintiff.

In the present case, the defendants contend that they owed no duty to the plaintiff infant at the time of the allegedly negligent conduct because the consequences of their actions were not foreseeable. We disagree. The complaint alleges that the defendants transfused the wrong type of blood into a teenage girl who several years later became the plaintiff infant's mother and that such conduct on the part of the defendants caused damage to the unborn infant which resulted in permanent physical injuries to the infant. We emphasize that the defendants are a doctor and a hospital. There has been no showing that the defendants could not reasonably have foreseen that the teenage girl would later marry and bear a child and that the child would be injured as the result of the improper blood transfusion.

As reviewed earlier in this opinion, the case law in Illinois has established that a minor may recover for prenatal personal injuries sustained by him if he is born alive. That is alleged to have happened here. The circumstance which makes this case peculiar is that the allegedly negligent conduct occurred years before the plaintiff infant was conceived and injured. However, in other types of cases, tort liability has not been barred because the allegedly wrongful conduct occurred long before the resultant injury if duty and causation can be established.

*Skinner v. Anderson*, 38 Ill. 2d 455, 231 N.E.2d 588; *Laukkanen v. Jewel Tea Co.*, 78 Ill. App. 2d 153, 222 N.E.2d 584; 54 C.J.S. *Limitations of Actions* §174 (1948).

We agree with *Jorgensen v. Meade Johnson Laboratories, Inc.* We find no logical reason to deny recovery to a person simply because he had not yet been conceived when the wrongful conduct took place.

Counts VI-X of the complaint were sufficient to state causes of action for ordinary negligence and willful and wanton misconduct. Accordingly, the judgment dismissing Counts VI-X is reversed, and the cause is remanded to the circuit court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

TRAPP, P. J., and SIMKINS, J., concur.