Kenneth WALKER and Judith Walker, Individually, and Kathy Walker, Jennifer Walker and Nathan Walker, Minors b/n/f Kenneth Walker, Appellants (Plaintiffs Below),

v.

Larrie G. RINCK, D.O. and Lake Ridge Laboratory, Inc., Appellees (Defendants Below).

No. 64A03–8906–CV–226.

Court of Appeals of Indiana, Third District.

Feb. 21, 1991.

Rehearing Denied March 27, 1991.

Dawn E. Wellman, Brand & Allen, Greenfield, for appellants.

Daniel A. Gioia, Robert D. Brown, Spangler, Jennings & Dougherty, P.C., Merrillville, Katharine Gerken, Hoeppner, Wagner & Evans, Valparaiso, for appellee Larrie G. Rinck, D.O.

Richard Hanning, Eichhorn, Eichhorn & Link, Hammond, for appellee Lake Ridge Laboratory, Inc.

HOFFMAN, Presiding Judge.

Plaintiffs-appellants Kathy, Jennifer, and Nathan Walker, by next friend Kenneth Walker, appeal the decision of the trial court granting summary judgment in favor of defendants-appellees Dr. Larrie G. Rinck and Lake Ridge Laboratory, Inc. (Lake Ridge).

The facts relevant to this appeal disclose that in October of 1975, Dr. Rinck, Judith Walker's family physician, informed Judith that she was pregnant. Judith, a registered nurse, informed Rinck that she had Rh-negative blood.[1] Rinck ordered the routine battery of tests, and the blood chemis-

---

1. Judith's husband, Kenneth, has Rh-positive blood. When an Rh-negative woman *is* pregnant with an Rh-positive child, her blood develops Rh agglutinins or clumping agents. On a subsequent pregnancy, if the fetus is Rh positive, these agglutinins can harm the infant's blood. An injection of RhoGAM,[1] Rh immune globulin, prevents the formation of the agglutinins in Rh-negative women who have received Rh-positive blood. *See generally* 3 *Schmidt's Attorneys' Dictionary of Medicine*, R–100–102, 110 (1990).

try report from Lake Ridge erroneously indicated that Judith's blood was Rh positive. On June 7, 1976, Judith gave birth to her first child, Rachel, who has Rh-positive blood. Judith did not receive a RhoGAM injection at any time during the pregnancy or after the birth.

In 1979, Judith left Rinck's care and became a patient of Dr. Jack Schwartz. She suffered a miscarriage in December of 1979, and while she was recovering in the hospital, a lab technician informed her that she was not a candidate for RhoGAM because her "antibodies" had already been established. Judith again became pregnant in 1980, and Schwartz informed her that, due to her Rh sensitization, the baby might be premature and anemic. On May 13, 1981, Judith gave birth to her second child, Nathan, who has Rh-positive blood. Nathan was approximately five weeks premature and suffered from anemia and respiratory problems.

Although Judith and Kenneth had planned to have only two children, Judith once again became pregnant in June of 1984. She became a patient of Dr. Michael Socol in August or September of 1984, and gave birth to twins, Kathy and Jennifer, on February 11, 1985. Kathy has Rh-positive blood and suffers from a severe hearing impairment, motor skill deficiencies, and possible mental retardation. Jennifer has Rh-negative blood and suffers from asthma. The twins were approximately four weeks premature.

On December 23, 1985, the Walkers filed a complaint against Rinck and Schwartz for negligence. The Walkers filed an amended complaint on May 29, 1986, adding Lake Ridge and the St. Anthony Medical Center, Inc. as defendants. Lake Ridge filed a motion for summary judgment on July 15, 1988, and Rinck filed a motion for summary judgment on October 13, 1988. The trial court granted both motions on December 30, 1988. This appeal ensued.

The Walkers raise two issues for review which this Court restates as follows:

(1) whether the Walkers' claim states a cause of action; and

(2) whether the statute of limitations bars the Walkers' claim.

 In this case of first impression in Indiana, the Walkers ask this Court to hold that a cause of action exists for children who are injured as a result of a "preconception tort" committed against the mother. They rely heavily on *Renslow v. Mennonite Hospital* (1977), 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250, and *Monusko v. Postle* (1989), Mich.App., 437 N.W.2d 367, in support of their position; however, these cases relied in part upon precedent in prenatal injury cases and product liability cases. *See, e.g., Sinkler v. Kneale* (1960), 401 Pa. 267, 164 A.2d 93; *Jorgensen v. Meade Johnson Laboratories, Inc.* (10th Cir.1973), 483 F.2d 237. Defendants, on the other hand, ask this Court to follow the reasoning of *Albala v. City of New York* (1981), 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786, a case in which the Court of Appeals of New York refused to recognize a cause of action for a preconception tort. The *Albala* court outlined the following policy considerations for its decision:

> "We are of the opinion that the recognition of a cause of action under these circumstances would require the extension of traditional tort concepts beyond manageable bounds[.]
>
> * * * * * *
>
> [T]here is no predicate at common law or in our statutes for judicial recognition of the birth of a defective child as an injury to the child....
>
> We determined long ago in a case involving policy issues as sensitive as the ones at bar that foreseeability alone is not the hallmark of legal duty for if foreseeability were the sole test we could not logically confine the extension of liability. [Citations omitted.]
>
> Unlimited hypotheses accompanied by staggering implications are manifest. The perimeters of liability although a proper legislative concern, in cases such as these, cannot be judicially established in a reasonable and practical manner.
>
> * * * * * *

While the temptation is always great to provide a form of relief to one who has suffered, it is well established that the law cannot provide a remedy for every injury incurred." [Citation omitted.] *Id.*, 445 N.Y.S.2d at 109–111, 429 N.E.2d at 787–789. Based on these considerations, we affirm the trial court's decision to grant summary judgment in favor of defendants.

■ Moreover, even assuming a cause of action exists in this case, the conduct of the parents was an intervening, superseding cause of the children's health problems. The depositions of both parents and the complaint show that the parents were aware of the Rh sensitization in 1979. Nathan was not born until May of 1981, and the twins were not born until February of 1985. As our Supreme Court noted in *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158: "an intervening cause may serve to cut off the liability of one whose original act or omission sets in motion the chain of events or circumstances leading to an injury." Clearly, the parents' conduct in conceiving children with knowledge of the Rh sensitization was an intervening, superseding cause of Nathan and Kathy's problems;[2] therefore, any negligence on the part of defendants was not the proximate cause of the problems.

Due to our decision on the first issue, we need not address the second issue.

The judgment of the trial court is affirmed.

GARRARD, J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent. The majority disregards traditional concepts of duty in tort, analogous case law, and policy considerations in its holding that no cause of action exists in this case.

Fundamental principles of duty in Indiana tort law require the recognition of a cause of action based upon the narrow set of facts presented in this case. The question of whether a duty to exercise care arises is governed by the relationship of the parties and is an issue of law within the province of the court. *Douglass v. Irvin* (1990), Ind., 549 N.E.2d 368. The duty of reasonable care is not owed to the world at large, but rather to those who might reasonably be foreseen as being subject to injury by breach of the duty. *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574 n. 4, *reh. denied, trans. denied.* "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." *Palsgraf v. Long Island R. Co.* (1928), 248 N.Y. 339, 344, 162 N.E. 99, 100.

When faced with an issue of duty in a negligence case, Indiana courts apply a foreseeability test tempered by a consideration of the relationship between the parties. "In determining whether a legal duty arises, consideration must be given to the nature of the relationship between people and whether the party being charged with negligence had knowledge of the situation or circumstances surrounding that relationship." *T.S.B. by Dant v. Clinard* (1990), Ind.App., 553 N.E.2d 1253, 1256. *See also Lawson v. Howmet Aluminum Corp.* (1983), Ind.App., 449 N.E.2d 1172. The knowledge of this attendant danger may be actual or imputed. *Hunsberger v. Wyman* (1966), 247 Ind. 369, 373–74, 216 N.E.2d 345, 348; *State v. Edgman* (1983), Ind. App., 447 N.E.2d 1091, *reh. denied, trans. denied.*

Applying traditional concepts of duty to this case, it is clear that the defendants knew or should have known of the risk occasioned by the failure to administer RhoGAM to Judith Walker. It is equally clear that Judith's later-born children are those who might reasonably be foreseen as being subject to injury by breach of the duty; indeed, the drug which should have been administered to Judith was specifically designed to reduce the risk of injury suffered by children in this situation. The

---

**2.** The other twin, Jennifer, is Rh negative. As previously discussed in footnote 1, the Rh agglutinins can harm only Rh-positive babies; there-fore, Jennifer's problem (asthma) is not due to her mother's failure to receive a RhoGAM injection.

defendants also maintained the requisite relationship with the children which gives rise to the duty. The defendants rendered medical service to Judith Walker, the mother of the plaintiffs. Considering traditional notions of negligence law, the defendants owed a duty of reasonable care to the Walker children.[1]

The language of the Medical Malpractice Act supports this conclusion. The Act defines "malpractice" as:

a tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

IC 16–9.5–1–1(h). A "patient" is defined as:

an individual who receives or should have received health care from a health care provider, under a contract, express or implied, *and includes a person having a claim of any kind,* whether derivative or otherwise, *as a result of alleged malpractice* on the part of a health care provider. Derivative claims include, but are not limited to, the claim of a parent or parents, guardian, trustee, *child,* relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

IC 16–9.5–1–1(c) (emphasis added). The Walker children have brought a claim which they allege is the result of the defendants' malpractice. Thus, they are "patients" within the scope of the Act. A construction of the statute which excludes from the class of "patients" those individuals who were not physically present when the health care provider rendered services would controvert the plain meaning of of the Act. While we cannot say that the legislature envisioned this particular scenario, the language "a person having a claim of any kind, . . . as a result of alleged

malpractice . . ." indicates that this cause of action is not foreclosed.

Case law from other jurisdictions is instructive as well. In a case decided on nearly identical facts, the plaintiff alleged that the defendants negligently transfused her mother with Rh positive blood on two occasions. *Renslow v. Mennonite Hospital* (1976), 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250. The mother, who was thirteen years old at the time of the transfusions, had Rh negative blood which was incompatible with, and became sensitized by, the Rh positive blood. The plaintiff's mother discovered she had been Rh-sensitized in the course of prenatal care. Plaintiff was born prematurely, suffering from jaundice and hyperbilirubinemia, requiring two immediate, complete exchange transfusions of her blood.

The Illinois Appellate Court found that a duty existed to the plaintiff, holding that there was no showing that the defendants could not reasonably have foreseen that the teenage girl would later bear a child, and that the child would be injured as a result of defendants' negligence. 40 Ill. App.3d 234, 239, 351 N.E.2d 870, 874. The Illinois Supreme Court affirmed, finding it "illogical to bar relief for an act done prior to conception where the defendant would be liable for this same conduct had the child, unbeknownst to him, been conceived prior to his act." 67 Ill.2d at 357, 10 Ill. Dec. at 489, 367 N.E.2d at 1255. The *Renslow* court held that there is a right to be born free from prenatal injuries foreseeably caused by a breach of duty to the child's mother.

The *Renslow* court also considered established tort principles of duty, noting that Illinois "has long recognized that a duty may exist to one foreseeably harmed though he be unknown and remote in time and place," and that "the law has long recognized that a wrong done to one person

---

**1.** As the court noted in *Schroeder v. Perkel* (1981), 87 N.J. 53, 432 A.2d 834, 839;

The foreseeability of injury to members of a family other than one immediately injured by the wrongdoing of another must be viewed in light of the legal relationships among family members. A family is woven of the fibers of

life; if one strand is damaged, the whole structure may suffer. The filaments of family life, although individually spun, create a web of interconnected legal interests. This court has recognized that a wrongdoer who causes a direct injury to one member of the family may indirectly damage another.

may invade the protected rights of one who is intimately related to the first." *Id.* at 357, 10 Ill.Dec. at 488–89, 367 N.E.2d at 1254–55. The court further held that policy considerations, such as the advances made in the medical sciences which led to the recognition of prenatal torts, warranted the extension of duty in the case before it. *Id.* at 357–58, 10 Ill.Dec. at 489, 367 N.E.2d at 1255.

More recently, in *Monusko v. Postle* (1989), 175 Mich.App. 269, 437 N.W.2d 367, the Michigan Appellate Court recognized a viable "preconception tort" cause of action against physicians who treated the plaintiff's mother before and after an earlier pregnancy. The physicians allegedly failed to immunize the mother from rubella during her second pregnancy, and the mother later contracted the rubella while pregnant with her third child, the plaintiff. The plaintiff was born suffering from rubella syndrome, a condition which manifests itself in severe physical and mental impairments.

There, as in *Renslow*, the court was confronted with the issue of duty. The *Monusko* court relied on fundamental principles of tort law, noting that duty is "essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation of the actor's part for the benefit of the injured person[,]" and that the existence of a duty is based in part on "whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Id.,* 437 N.W.2d at 369.

Concluding that it is readily foreseeable that someone not immunized could contract rubella and, if pregnant, bear a child suffering from rubella syndrome, the court determined that the defendants owed the plaintiff a duty to administer a test and immunization that was specifically designed to prevent the harm to children who

were not yet conceived. *Id.,* 437 N.W.2d at 369–70.

Other jurisdictions have concluded that a duty may extend to persons not yet conceived at the time of a negligent act or omission. *See, e.g., Harbeson v. Parke-Davis, Inc.* (1983), 98 Wash.2d 460, 656 P.2d 483; *Turpin v. Sortini* (1982), 31 Cal.3d 220, 643 P.2d 954, 182 Cal.Rptr. 337; *Bergstreser v. Mitchell* (8th Cir.1978), 577 F.2d 22 (applying Missouri law); *Jorgensen v. Meade Johnson Laboratories, Inc.* (10th Cir.1973), 483 F.2d 237 (applying Oklahoma law in a product liability action); *McAuley v. Wills* (1983), 251 Ga. 3, 303 S.E.2d 258 (though factors not present in the instant case, in some situations a person should be under a duty of care toward an unconceived child).

Despite the number of cases approving of such a cause of action, the majority finds persuasive the reasoning of *Albala v. City of New York* (1981), 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786. However, a proper application of the rationale employed in *Albala* requires an examination of its facts. The plaintiff was born in 1976 suffering from brain damage. It was alleged that his injuries were the result of an abortion performed on the plaintiff's mother in 1971. During that procedure, the defendants perforated the uterus of the plaintiff's mother. As the majority noted, the *Albala* court prefaced its opinion with the statement that "the recognition of a cause of action *under these circumstances* would require the extension of traditional tort concepts beyond manageable bounds[.]" *Id.* at 271–72, 445 N.Y.S.2d at 109, 429 N.E.2d at 787 (emphasis supplied). The plaintiff in *Albala* was much more remote and the injuries far less unforeseeable than in the present case, where the health of the Walker children was the primary concern behind the administration of the drug Rhogam. Thus, the *Albala* case is readily distinguishable and off the spectrum of foreseeability.[2]

---

**2.** The *Albala* court concluded that the *Jorgensen* case, *supra,* was inapposite to its determination, inasmuch as *Jorgensen* was decided on a product liability theory for which there is strict lia-

bility without fault. This interpretation of *Jorgensen* is mistaken. The court in *Jorgensen* allowed the plaintiffs to proceed on each theory

While not unmindful of the considerations espoused by the majority, this court should also factor those policy arguments in favor of extending liability. First, courts are loathe to allow an injury to be suffered without a remedy. *Bergstreser, supra,* at 25. Second, courts in Indiana have expressed their reluctance to immunize those in the medical field from liability for their performance in one particular area of medical practice. *Garrison v. Foy* (1985 Ind.App.), 486 N.E.2d 5, 8. *See also Schroeder v. Perkel* (1981), 87 N.J. 53, 432 A.2d 834 (exoneration of negligent practitioners would provide no deterrent to professional irresponsibility). Third, disallowing this cause of action could promote concealment of the alleged negligence until the two-year statute of limitations with respect to the parent has expired, in that it may be more than two years before the mother becomes pregnant and discovers, upon prenatal testing or upon the birth of the child, that she has been Rh sensitized.

I further disagree that "unlimited hypotheses accompanied by staggering implications are manifest." *Albala, supra,* at 273, 445 N.Y.S.2d at 110, 429 N.E.2d at 788. Where, as in this case, the perimeters of liability are limited to situations in which a practitioner performs medical care for the purpose of safeguarding the health of children yet to be conceived, the implications are neither staggering nor manifest.

The predominant view among courts which have addressed this issue is that a duty can be owed to a person prior to that person's conception. I agree, and would hold that in limited factual settings, such as that found in the case before us, a health care provider can owe such a duty and be held accountable for the person's injuries that were the result of the provider's malpractice.

Finally, although I agree with the majority that Mr. and Mrs. Walker's conduct operated as an intervening, superseding cause with respect to the twins, Jennifer and Kathy, I cannot agree that the parents had knowledge of the Rh-sensitization and its ramifications prior to the conception of

of their product liability claim, including *negli-*

Nathan. At best, the pleadings and depositions are conflicting on this point. The majority has resolved these conflicts against the Walkers, the nonmovants in the summary judgment proceeding below. This Court is not the appropriate venue for resolving genuine issues of material fact. *Majd Pour v. Basic American Medical, Inc.,* (1990), Ind.App., 555 N.E.2d 155, *reh. denied.* I would reverse the judgment of the trial court as to Nathan.