Scott Willis YEAGER and Merlyn and
Lorraine Yeager, Appellants–
Plaintiffs,

v.

BLOOMINGTON OBSTETRICS AND
GYNECOLOGY, INC., Dr. Walter Ow-
ens, Dr. William R. Anderson, Dr. Le-
land Matthews, and Dr. Brandt Ludlow
and Local Counsel of Women, Inc.,
d/b/a Bloomington Hospital, Appel-
lees–Defendants.

No. 53A01–9110–CV–309.

Court of Appeals of Indiana,
First District.

Feb. 4, 1992.

Vernon J. Petri, David Schalk, Vernon J. Petri, P.C., Indianapolis, for appellants-plaintiffs.

David J. Mallon, Jr., Gloria A. Aplin, Indianapolis, Gary J. Clendening, J. Suzette Vandivier, Harrell, Clendening & Coyne, Bloomington, for appellees-defendants.

ROBERTSON, Judge.

Scott Willis Yeager [1] brings this consolidated appeal of the decisions of two trial courts to dismiss Scott's two medical malpractice complaints which are based on a "preconception tort" theory. The trial courts assumed jurisdiction and dismissed Scott's complaints under Ind.Code 16–9.5–10–1 before the medical review panel had rendered its written opinion regarding Scott's proposed complaints. In his complaint, Scott alleges that his mother's doc-

---

1. Scott Yeager's parents, Merlyn and Lorraine Yeager, are listed as appellants in the caption of this case. However, in the appellants' brief, Merlyn and Lorraine Yeager have indicated that they have abandoned their claims, conceding that their claims are time-barred. Accordingly, we will refer to Scott as the only appellant in this case.

Scott has similarly abandoned his claim based on a "wrongful life" theory, recognizing that our supreme court has recently held that damages based on the theory are not cognizable in Indiana. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630.

tors' failure to administer the drug Rho-GAM during and after his mother's pregnancy with his older brother caused his mother to become sensitized to Rh-positive blood which ultimately resulted in his own serious personal injuries. The defendants of Scott's first lawsuit are the Bloomington Obstetrics and Gynecology, Inc., Dr. Walter Owens, Dr. William R. Anderson, Dr. Leland Matthews, and Dr. Brandt Ludlow. The defendant in Scott's second lawsuit is the Local Counsel of Women, Inc., d/b/a Bloomington Hospital. The trial courts below dismissed Scott's claims based upon our third district's decision in *Walker v. Rinck* (1991), Ind.App., 566 N.E.2d 1088 (Staton, J. dissenting), *trans. pending*. We disagree with the majority in *Walker* and hold that Scott's complaint sufficiently states a cognizable claim. Therefore, we reverse.

## FACTS

Scott's complaint alleges that his mother, Lorraine Yeager, has Rh-negative blood. When Lorraine gave birth to the Yeagers' third child, Scott's older brother, Merlyn II, she was exposed to Merlyn's Rh-positive blood and developed the antibodies which attack Rh-positive blood. The defendant doctors provided Scott's mother with prenatal care and delivered Merlyn II.

Scott is the Yeagers' fourth child and also has Rh-positive blood. During Lorraine's pregnancy with Scott, her Rh-anti-bodies attacked Scott's Rh-positive blood. These antibodies continued to attack Scott's blood cells after his birth until the antibodies finally cleared his system. Scott suffered serious permanent personal injuries, including brain damage, as a result of the attack of his mother's Rh-antibodies upon his blood cells.

The drug RhoGAM (brand name of Rh-immune globulin) is specifically designed to prevent the types of injuries suffered by Scott. RhoGAM can prevent an Rh-negative woman from developing the sensitivity to Rh-positive blood when administered during the pregnancy and delivery of her first Rh-positive child.

Scott alleges that his mother's doctors' failure to administer RhoGAM during and after his mother's pregnancy with his older brother constituted medical malpractice which ultimately resulted in the personal injuries for which he seeks compensation. Obviously, this alleged act of malpractice occurred before Scott's conception; thus, it is described as a "preconception tort."

## DECISION

◼ Last year, the third district of our court decided the case of *Walker v. Rinck* (1991), Ind.App., 566 N.E.2d 1088 (Staton, J., dissenting), *trans. pending*, which, for all legally relevant purposes, is factually indistinguishable from the present case. In *Walker*, the child plaintiffs sued their mothers' doctor, alleging that his failure to administer RhoGAM during and after their mother's earlier pregnancy with an Rh-positive sibling resulted in their serious personal injuries. The Walker children also sued a medical laboratory alleging that the doctor's failure to administer RhoGAM was caused by the lab's erroneous analysis of their mother's blood.

The *Walker* majority noted that the case was one of first impression in Indiana and relied on the New York case of *Albala v. City of New York* (1981), 54 N.Y.2d 269, 445 N.Y.S.2d 108, 429 N.E.2d 786, in holding that "preconception torts" will not be recognized in Indiana. *Id.* at 1089. The rationale of the *Walker* majority and the *Albala* decision is, in a nutshell, that the recognition of preconception torts "would require the extension of traditional tort concepts beyond manageable bounds." *Id.* at 1089.

Distinguished Professors Prosser and Keeton have criticized the *Albala* decision, describing it as a "thinly reasoned case." W. Keeton, Prosser and Keeton on the Law of Torts, § 55, at p. 369 (5th ed. 1984). Prosser and Keeton suggest that some hypothetical preconception tort claims, especially those arising from toxic chemicals or radioactive waste, should not be recognized because of serious inherent problems related to proof and proximate causation. However, Prosser and Keeton note:

These are indeed staggering problems, that will have to be dealt with carefully in future toxic tort contexts such as these, but they by no means require that a blanket no-duty rule be applied in preconception injury cases where such [proof and proximate causation] problems do not exist.

*Id.*

■ We agree with Prosser & Keeton that a blanket no-duty rule which disallows all claims based upon preconception tort theories (as established in *Walker*, 566 N.E.2d 1088) is unnecessary when problems related to proof and proximate causation are nonexistent. We also agree with Judge Staton's well-reasoned dissenting opinion in *Walker* in which he opined that, under traditional and fundamental principles of Indiana tort law, the Walker children had sufficiently stated a cognizable claim.

We believe that the approach taken by our supreme court in *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, in determining whether a physician owed a third party the duty of reasonable care under a peculiar set of facts and circumstances is the appropriate method to employ in determining whether Scott's mother's doctors owed the duty of reasonable care to Scott under the facts and circumstances alleged in Scott's complaint.

■ In *Webb*, our supreme court held that the professional liability of a physician would not extend to the shooting victim of the doctor's patient who was alleged to have become a toxic psychotic unable to control his rages as the result of the physician's negligent overprescription of anabolic steroids. In reaching this conclusion, our supreme court balanced the following three (3) factors in determining whether the shooting victim had stated a cognizable claim: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and 3) public policy concerns. With respect to the first factor to be balanced, the relationship between the physician and the third party, our supreme court noted:

[W]e have recognized that a duty may be owed to a beneficiary of the consensual [physician/patient] relationship, akin to that of a third party beneficiary of a contract, where the professional has actual knowledge that the services being provided are, in part, for the benefit of such third persons.

575 N.E.2d at 996. With respect to the second factor to be balanced, the reasonable foreseeability of harm to the person injured, our supreme court noted:

Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. PROSSER & KEETON ON TORTS, § 53 (5TH ED. 1984). Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. HARPER, JAMES & GRAY, The Law of Torts Vol. 3 § 18.2 (2d ed. 1986).

575 N.E.2d at 997. With respect to the third factor to be balanced, the public policy involved, our supreme court stated:

'Duty is not sancrosanct [sic] in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.' PROSSER AND KEATON [sic], *supra*, § 53. We conclude that public policy considerations weigh heavily against finding a duty here.

575 N.E.2d at 997.

We will attempt to balance the three (3) above-mentioned factors to test the sufficiency of Scott's complaint. At the outset, we would note that, when compared to many common recognized medical malpractice claims, the problems of proof and proximate causation inherent under the present circumstances do not impress us as particu-

larly onerous. We believe that Judge Staton succinctly balanced the first two factors in his dissenting opinion in *Walker*, 566 N.E.2d at 1090. Judge Staton gave the following reasons in support of his opinion that the Walker children's cause of action should be recognized:

> Applying traditional concepts of duty to this case, it is clear that the defendants knew or should have known of the risk occasioned by the failure to administer RhoGAM to [the Rh-negative mother]. It is equally clear that [the mother's] later-born children are those who might reasonably be foreseen as being subject to injury by breach of the duty; indeed, the drug which should have been administered to [the mother] was specifically designed to reduce the risk of injury suffered by children in this situation. The defendants also maintained the requisite relationship with the children which gives rise to the duty. The defendants rendered medical service to [the mother], of the plaintiffs. Considering traditional notions of negligence law, the defendants owed a duty of reasonable care to the Walker children.

566 N.E.2d at 1090, 1091. As we cannot improve upon the analysis contained in Judge Staton's dissenting opinion, we will simply incorporate the rest of its reasoning into the analysis of our present decision by reference.

Moreover, we cannot conclude that public policy considerations weigh against the finding of a duty running from Scott's mother's doctors to Scott under the facts in this case. The appellees suggest that preconception torts should not be recognized because:

> Insuring the risk of loss for [preconception] torts will be impossible to calculate. The incurred cost of insurance premiums, if insurance can even be obtained, may force physicians, especially obstetricians and gynecologists, out of practice. Smaller hospitals might also have to close their doors or deny obstetrical care to the community.

(Brief of Local Counsel of Women, Inc. d/b/a Bloomington Hospital, p. 12).

We agree that such concerns are of paramount importance. We would note, however, that our legislature has vigorously intervened in the area of medical malpractice by enacting the Indiana Medical Malpractice Act, I.C. § 16–9.5–1–1 *et seq.*, out of concern for these very policy considerations. *Garrison v. Foy* (1985), Ind.App., 486 N.E.2d 5; *Winona Memorial Foundation of Indianapolis v. Lomax* (1984), Ind. App., 465 N.E.2d 731, *trans. denied.* In furtherance of these policies, the Indiana Medical Malpractice Act provides, among several provisions designed to protect the practice of medicine from malpractice claims, for 1) an "occurrence" rather than a "discovery" statute of limitations, I.C. 16–9.5–3–1; 2) a "cap" on the total amount recoverable, I.C. 16–9.5–2–2; 3) a medical review panel to review all proposed medical malpractice complaints, I.C. § 16–9.5–9–1. We believe that these protections, among others, help to ensure that traditional tort concepts remain within manageable bounds.

Considering the vigorous manner in which the legislature has intervened in the area of medical malpractice, we believe it would be inappropriate for us to adopt a blanket no-duty rule which would disallow all medical malpractice claims based upon preconception tort theories in order to advance the very policies underlying the Indiana Medical Malpractice Act. We believe that the legislature has preempted this area and that all further "blanket" type protections designed to ensure that tort claims remain within manageable bounds should be implemented by our legislature.

Finally, we note that our supreme court recently held that "wrongful life" damages are not cognizable in Indiana. *Cowe v. Forum Group, Inc.* (1991), Ind., 575 N.E.2d 630. However, in doing so, the *Cowe* court carefully distinguished "wrongful life" cases from "cases which allege a defendant's tortious conduct as the cause of abnormalities in infants that would otherwise have been born normal and healthy." *Id.* at 634 (n. 2). Our supreme court cited, among other preconception tort

cases from other jurisdictions, the case of *Renslow v. Mennonite Hosp.* (1977), 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250. In *Renslow*, an Illinois court recognized a cause of action for an Rh-positive child who alleged he was injured by his Rh-negative mother's sensitization to Rh-positive blood which resulted from an improper blood transfusion administered before that child's conception. Judge Staton relied extensively on the *Renslow* decision in his dissenting opinion in *Walker*, 566 N.E.2d at 1091.

■ We agree with Professors Prosser and Keeton, and Judge Staton, that a blanket no-duty rule disallowing all claims based upon alleged preconception torts is unnecessary, unjust, and contrary to fundamental and traditional principles of Indiana tort law. Based on the above, we hold that Scott Yeager's complaint sufficiently states a cognizable claim. Therefore, we reverse and remand with instructions that Scott's proposed complaint be permitted to proceed before the medical review panel.

Judgment reversed.

BARTEAU and SHARPNACK, JJ., concur.